618 So.2d 1225 (1993)
Stella STRAUGHAN
v.
Dr. Saeed AHMED.
No. 92-CA-1115.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1993.
Edward P. Gothard, F.M. Stoller, McCloskey, Langenstein & Stoller, New Orleans, for plaintiff/appellant, Stella Straughan.
Chester A. Fleming, III, Boggs, Loehn and Rodrigue, New Orleans, for defendant/appellee, Saeed Ahmed, M.D.
Before KLIEBERT, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Stella Straughan, appeals from a judgment in a medical malpractice case. The judgment dismissed her action against defendant, Dr. Saeed Ahmed, for lack of causation. Because we find manifest error *1226 in the finding of no causation as to a portion of her claimed damages, we reverse that portion of the judgment, and render a judgment for damages due to mental distress. The judgment is otherwise affirmed.
Defendant is an internist with a sub-specialty in nephrology, the treatment of kidney disorders. Plaintiff is a 74 year old female who resides in a nursing home. Plaintiff was a patient of defendant since 1982. She suffered from hypertension, coronary artery disease, peripheral vascular disease (poor circulation of the extremities related to diabetes and coronary heart disease) and renal insufficiency (poor kidney function). She has a prior history of a cerebral vascular accident (CVA, stroke).
Plaintiff saw defendant on a monthly basis for treatment of her medical needs from 1982 until 1986. On July 11, 1986 she informed defendant that she discovered a lump in her right breast. Defendant examined her. He contends that he told her to see a general surgeon or obstetrician-gynecologist to determine the exact nature and treatment of the mass. A few days later he set up a mammogram while she was hospitalized for tests related to her coronary artery disease. Plaintiff mistakenly denied having the mammogram. Armed with the results of the mammogram and while plaintiff was still in the hospital, defendant claims that he again told her to seek a specialist for follow-up to the test. Plaintiff asserts that defendant did not recommend that she see another doctor but told her not to worry. However, she continued to be concerned and questioned him about the mass on every monthly visit for the next two years.
The radiologist report of July, 1986 stated that there was a "palpable nodule in the medial upper quadrant of the right breast" suspicious for "dysplastic changes" and "possibly neoplasm (cancer)".
On December 5, 1986, plaintiff removed her x-ray file from East Jefferson General Hospital. This was apparently done in connection with a hospitalization at Touro Infirmary on December 19-23, 1986 where she was seen for a second opinion related to her coronary artery disease.
In May, 1988, plaintiff went to Oschner Clinic complaining of weight loss and gastrointestinal problems. During that workup, a lump in her right breast was noted. A biopsy was performed revealing cancer. Within two months a simple mastectomy was performed, whereby the entire breast was removed, but not the chest musculature or lymph nodes. The location of this mass was in the midline or central portion. It size was 1.5 × 1.4 × 1.2 centimeters. She also underwent 56 radiation treatments following the surgery.
Plaintiff filed suit against defendant on March 1, 1991 after a medical review panel found that defendant's failure to follow-up on his advice to plaintiff constituted below-standard care. A jury trial was held on January 27, 28 and 29, 1992. The jury found that defendant was negligent, but that his substandard conduct was not the cause of plaintiff's injuries. The negligence found by the jury was the doctor's failure to follow-up once the suspicious lump was discovered.
On appeal, plaintiff contends that the jury was manifestly wrong in its determination that defendant did not cause her injuries. She contends that the verdict did not follow the law as instructed by the court. Plaintiff asserts that the applicable legal principle holds that, in order to establish causation in a medical malpractice case, the plaintiff need not prove that she would have had a better result if properly treated, but only that defendant's malpractice resulted in her loss of a chance of a better recovery, citing Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991). She contends that the evidence shows that she may have had treatment options in 1986 which were not available to her in 1988. She may have only required a lumpectomy, which entails removal of the mass while salvaging the breast, and radiation might not have been necessary. She asserts that the lump grew and precluded any option other than breast removal. She claims that the delay in treatment caused her mental distress due to the loss of the *1227 breast, fear of death and the reoccurrence of cancer, pain and suffering from the radiation treatments and partial loss of use of her arm.
Defendant responds that the jury was not manifestly erroneous because the evidence supports a different conclusion than the one urged by plaintiff. He contends that the radiology reports from the mammogram taken in 1986 and 1988 show that the lumps, in each case, are located in different regions of the breast. He points out that plaintiff's daughter testified in deposition that her mother did not have a lump when she entered Touro Infirmary five months after its initial discovery. Therefore, since only non-malignant masses disappear and reappear, he asserts that this lump was more likely than not a benign cyst. He points out that unlike a benign mass, cancer tumors grow. In this case, the size of the initial lump was ½ while the later mass was also very small, indicating that the mass was a different tumor.
Defendant asserts that plaintiff would not have necessarily had other options in 1986 in any event. He cites the medical testimony of both plaintiff's expert, Dr. Morris Flaum, an oncologist and hematologist, and defendant's expert, Dr. Robert Miller, a general surgeon. That testimony shows that the options that plaintiff urges would have been available were not necessarily available for her because their use depends upon a patient's general health. In this case, defendant contends that plaintiff was too ill in 1986, as well as 1988, to consider any option but a simple mastectomy, which is a relatively uncomplicated procedure compared to a lumpectomy, radical mastectomy or modified radical mastectomy.
The testimony shows that plaintiff reported the mass to defendant in July 1986, following which a mammogram was taken. No further action to follow-up was done by defendant. When plaintiff entered Touro Infirmary in December the lump was not recorded. No further report of a lump is found until the Oschner Clinic admission when plaintiff received a physical exam during the work-up.
Plaintiff, however, asserts that she continued to complain for almost two years to defendant and that the lump grew from the size of a pea to the size of an egg. She testified she did not go to a specialist or another doctor because she trusted defendant who reassured her it was nothing to worry about. Plaintiff stated that she continued to worry about whether or not the lump was cancerous, nevertheless. Plaintiff's persistent and severe mental anguish is uncontested.
Plaintiff's expert, Dr. Morris Flaum, an oncologist and hematologist, testified the plaintiff would have required surgery of some kind in 1986, if the mass was found to be cancerous, because surgery is the appropriate treatment unless the tumor is an "inflammatory carcinoma", has spread or is very large. He stated it is unusual for a malignancy to remain the same size, but that it is possible. He also pointed out that he did not know the status of the lump in 1986, and that it cannot be determined at this date if the lump then and the one removed in 1988 were the same. He noted that in 1988 the lymph nodes were not removed because of her unstable medical condition.
Dr. Flaum stated the radiation may have side effects such as fibrosis, lymphoedema and damage to nerves. He stated that complications include redness, swelling, weeping of the skin and damage to the underlying lung. Dr. Flaum testified that delay in proper treatment can cause greater chance of metastasis (spreading of the cancer) requiring more extensive surgery and increased risk of local reoccurrence. He admitted that treatment options depend upon the general health of a patient. He discussed the 1986 mammogram, stating that the report showed two masses, one of which was apparently a benign cyst and the other, in the upper right part of the breast, was unknown. He affirmed that the masses in 1986 and 1988 were in different locations. In addition, he admitted that, based on his review of the records, it *1228 was unlikely that the delay had an adverse physical effect on plaintiff.
Defendant testified that he informed and advised plaintiff of the need for further testing by a doctor with more expertise in the area of breast cancer. He pointed out that plaintiff was extremely ill with renal failure and coronary artery problems at the time and he concentrated on saving her life.
Plaintiff's daughter, Gail Adamceivicz, testified to her mother's discomfort and fears related to the surgery. She stated that she took her mother to the doctors and hospitals and that she felt the lump in 1986. Ms. Adamceivicz stated that her mother told her that it was getting larger. Ms. Adamceivicz admitted that she stated in her deposition that her mother did not have the lump in December when she entered Touro Infirmary, but explained that she was nervous and she really did not remember because of her mother's numerous doctor office visits. Her testimony, however, supports plaintiff that she was extremely worried and fearful about the mass during the time she was treated by defendant.
Defendant's expert, Dr. Robert Miller, is a general surgeon who has performed numerous breast cancer surgeries. He testified that because of the plaintiff's age and medical history he would have recommended a simple mastectomy even in 1986. He stated that plaintiff's medical problems are so severe that she would not have tolerated any other type of surgery. He pointed out that the options available would have been a radical mastectomy, a modified radical mastectomy or lumpectomy, all of which are more complicated procedures than a simple mastectomy and increase the patient's surgical risks.
Dr. Miller testified that a cancerous mass will grow and will not go away and reappear, unlike a benign or fibrocystic mass. He stated that, in all probability, the 1986 lump was not the same as the one in 1988 because the cancerous mass was so small and in a different location. He noted that the 1986 mass was reported to be approximately ½" in diameter, whereas the one in 1988 was 1.5 × 1.4 × 1.2 centimeters.[1] He also stated that a mass smaller than two centimeters cannot be palpated. Dr. Miller testified further that plaintiff had extensive fibrocystic disease in her right breast, according to the Oschner Clinic records.
Dr. Miller testified that plaintiff's chances of survival are good at this time because she is three and a half years post-op without a reoccurrence. He stated that the five-year benchmark provides a 90% chance of survival.
We agree with plaintiff on the applicable law. Plaintiff need only prove the defendant's malpractice resulted in the patient's loss of a chance of a better recovery. Martin, 582 at 1278. However, the loss of a chance of a better recovery must be proven by a preponderance of the evidence, as in any tort case. Martin, 582 at 1276. Resolution of causation is a factual finding which should not be reversed on appeal absent manifest error. Martin, 582 at 1276. And, when there are two permissible views of the evidence the fact-finder's choice between them cannot be clearly wrong. Martin, 582 at 1277; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
In this case, the jury was presented with evidence which could be viewed in two ways. The first view holds that the tumor found in 1986 was malignant and was the same mass as the one in 1988. Under this view plaintiff would be entitled to damages caused by a delay in treatment. The second view holds that the lump found in 1986 is not the same as the one found in 1988 and that the 1986 lump was most probably benign. If this is accepted, the plaintiff has failed to establish causation to her damages related to the mastectomy. Because there are two permissible views of the evidence, we cannot state that the jury was clearly wrong in determining that the negligence of defendant was not the cause of her injuries insofar as they resulted from the actual surgery. Martin, 582 at 1277. In addition, even if we were to find *1229 the plaintiff proved causation for those injuries, the medical testimony established that she would have, more likely than not, incurred the identical procedure with all its attendant problems. However, this conclusion does not address her mental anguish or distress suffered during the period she was being treated by defendant.
Both plaintiff and her daughter testified to plaintiff's state of mind for the two year period preceding the actual diagnosis of cancer and surgery. Even if the malignant mass was not the same as the one first found, she was fearful, anxious and greatly concerned. That fear, which preyed on plaintiff for two years, escalated sharply with the diagnosis of cancer. Her fears were ultimately justified whether or not the mass was the same. While this distinction affects the claim for physical damages, it cannot defeat her claim for mental distress due to defendant's negligence. She suffered mental distress from the first time that defendant examined her for the lump in her breast. Also, she will always believe that, had defendant taken the proper steps in 1986, her recovery would have been better. This state of mind was directly caused by defendant's failure to follow-up on the unknown mass in 1986.
In general, except for the tort of intentional infliction of emotional distress, if a defendant's conduct is merely negligent and it causes only mental disturbance without a physical consequence, the defendant is not liable for the emotional injury. See: Moresi v. Department of Wildlife and Fisheries, 567 So.2d 1081 (La.1990). However, exceptions to the general rule have been carved out in cases where there is the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serve as a guarantee that the claim is not spurious." Moresi, 567 So.2d at 1096. We find such special circumstances exist where "cancerphobia" develops due to the negligence of the physician and that plaintiff's damages for emotional distress are recoverable.
Consequently, we find that plaintiff is entitled to damages for past, present and future mental anguish due to the negligence of defendant and we find that $40,000 will fairly compensate plaintiff for this element of damages.
Accordingly, the judgment of the trial court is hereby affirmed as to the negligence of defendant Saeed Ahmed and court costs. It is reversed insofar as the jury declined to award damages. Further, we award damages in the amount of $40,000 to plaintiff, Stella Straughan and against defendant, Saeed Ahmed, M.D.
Costs of this appeal to be paid by defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] One centimeter equals .39 inch.