630 So.2d 861 (1993)
Albert VALLERY, Individually and on Behalf of the Minor Children, Baby Vallery and JoAnn Vallery
v.
SOUTHERN BAPTIST HOSPITAL, et al.
No. 92-CA-2391.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
Writ Denied March 18, 1994.
*862 Glyn J. Godwin, New Orleans, for plaintiffs.
Walter W. Christy, Tracy K. Hidalgo, Kullman, Inman, Bee, Downing & Banta, New Orleans, for defendant.
Before BYRNES, WARD, ARMSTRONG, PLOTKIN and LANDRIEU, JJ.
ARMSTRONG, Judge.
Albert Vallery and his wife, JoAnn Vallery, brought this personal injury action against Albert Vallery's employer, Southern Baptist Hospital. The trial court maintained the hospital's exception of no cause of action and dismissed the suit upon a finding that Mr. and Mrs. Vallery's claims were barred by the "exclusive remedy" provision contained in the worker's compensation statute. We affirm the dismissal as to Mr. Vallery's claim. We affirm as to one of Mrs. Vallery's claims but reverse and remand for further proceedings as to another of Mrs. Vallery's claims.[1]
Mr. Vallery was employed as a security guard at the hospital. One night he was called to subdue an unruly patient. The hospital employees who had called Mr. Vallery to the scene stood by while Mr. Vallery restrained the patient. Apparently as a result of an intravenous needle being dislodged, the patient bled on Mr. Vallery's hand.
The other hospital employees had failed to tell Mr. Vallery, prior to his restraining the patient, that the patient suffered from Acquired Immune Deficiency Syndrome ("AIDS"). As a result, Mr. Vallery did not don gloves or other protective garments prior to restraining the patient. Moreover, once the incident was over, Mr. Vallery still was not told that the patient suffered from AIDS. After completing his shift, he went home and he and his wife JoAnn had sexual relations.
*863 The next day, hospital personnel informed Mr. Vallery that the patient whom Mr. Vallery had restrained had suffered from AIDS, and that, because the patient bled onto Mr. Vallery's unprotected hand, Mr. Vallery had been exposed to the human immunodeficiency virus ("HIV") which causes AIDS. Thus, Mr. Vallery was enrolled in a testing program to determine whether he had actually become HIV infected. Also, because Mr. and Mrs. Vallery had sexual relations after his exposure, Mrs. Vallery also was enrolled in the testing program. Additionally, Mr. Vallery was counseled as to the need to use condoms in case he had become HIV infected and Mrs. Vallery had not.
Mr. and Mrs. Vallery both have tested negative for HIV infection for more than two years. Mr. Vallery, and apparently Mrs. Vallery, were counseled by hospital personnel that they would have to test negative for HIV infection for one year in order to know that they were not HIV infected and that, thus, they would not acquire AIDS.
Mr. and Mrs. Vallery make no allegation that either of them was ever actually HIV infected or that either of them ever might actually suffer from AIDS. However, both Mr. and Mrs. Vallery make claims that they suffered from emotional distress for a year until it was determined that they were not HIV infected. Also, both Mr. and Mrs. Vallery make claims for loss of consortium due to their having to use condoms for a year.
The hospital's exception of no cause of action was based on the "exclusive remedy" provision of the worker's compensation statute. In the usual case, an employee's only remedy against his employer, for an employment-related injury, is the compensation prescribed by the worker's compensation statute. La.R.S. 23:1032. An exception is that the employee may sue the employer in tort for an injury arising from "an intentional act." La.R.S. 23:1032 B:
LSA-R.S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a coemployee, except for a suit based on an intentional act. The words "intentional act" mean the same as "intentional tort." The legislative aim was to make use of the well-established division between intentional torts and negligence in common law. The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. Bazley v. Tortorich, 397 So.2d 475 (La.1981).
The exclusive remedy rule is inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desires to bring about the physical results of his act, or believes they were substantially certain to follow from what he did. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Bazley, supra.

When an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder. Caudle v. Betts, 512 So.2d 389 (La. 1987).
White v. Monsanto, 585 So.2d 1205 (La.1991) See also Fallo v. Tuboscope Inspection, 444 So.2d 621 (La.1984) (where co-employee "should have known" he would produce harmful consequences the "intentional act" exception was not applicable).
The facts as alleged do not meet the requirements of the "intentional act" exception. The wrongful acts alleged are that (1) hospital personnel failed to inform Mr. Vallery that the patient had AIDS or to have Mr. *864 Vallery don gloves prior to restraining the patient and (2) hospital personnel failed to inform Mr. Vallery that the patient who had bled on him had AIDS, or to warn Mr. Vallery to use condoms, prior to the time he had sexual relations with Mrs. Vallery. The harmful consequences alleged are that (1) the patient bled onto Mr. Vallery's unprotected hand and (2) Mr. and Mrs. Vallery had unprotected sexual relations after Mr. Vallery had been exposed to HIV. There is no allegation that the hospital personnel desired to bring about either of the alleged harmful consequences. Also, the facts as alleged are such that there is no possibility that hospital personnel "knew" that it was "substantially certain" that either of the alleged harmful consequences would follow either of the alleged wrongful acts. It may be that the alleged wrongful acts created a serious risk of the alleged harmful consequences occurring, but that is not sufficient to make the "intentional act" exception applicable.
"Intentional act" in La.R.S. 23:1032B means "intentional tort." Intent means "that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." The exception has been narrowly interpreted pursuant to the legislature's policy decision. Bazley v. Tortorich, 397 So.2d 475, 482 (La.1981). "Substantially certain" can be restated as "virtually sure" or "nearly inevitable." Reagan v. Olinkraft, 408 So.2d 937 (La. App. 2d Cir.1981), writ denied 412 So.2d 1095 (La.1982).
Mere knowledge and appreciation of a risk does not constitute intent. Reckless or wanton conduct by an employer does not constitute intentional wrongdoing. Gross negligence, disregard of safety regulations or the use of safety equipment is not sufficient. Williams v. Gervais F. Favrot Company, Inc., 573 So.2d 533 (La. App. 4th Cir.), writ denied 576 So.2d 49 (La.1991). Nationwide, policy considerations reflect that the employer's conduct must go beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work in order to constitute an intent to injure necessary under the exception. Id. at 540, quoting Larson, 2A Workman's Compensation Law, Section 68.13 (1989).
Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806 (La.App. 4th Cir.1991) Accord Williams v. Gervais Favrot Co., 573 So.2d 533, 540-41 (La.App. 4th Cir.1991), writ denied, 576 So.2d 49 (La.1991).
However, although Mr. Vallery's exclusive remedy against the hospital is worker's compensation, Mrs. Vallery's claims present additional issues. She has made a claim for loss of consortium which arises due to her husband's exposure to HIV and a different claim for her own exposure to HIV as a result of her unprotected sexual relations with Mr. Vallery immediately after Mr. Vallery's then unknown exposure to HIV. The distinction between her two claims is important because Mrs. Vallery's claim for loss of consortium, being a claim that arises due to the injury to her husband, is subject to the "exclusive remedy" provision of the worker's compensation statute. La.R.S. 23:1032.
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
La.R.S. 23:1032 A (1)(a) (emphasis added). The word "injury" in the statute's phrases "an injury" and "for said injury" clearly refers to the injury to the employee. Thus, the "defendants" and "relations" of the employee cannot make negligence claims against the employer for injuries to the employeesuch as Mrs. Vallery's present claim for loss of consortium. It appears that other courts which have considered the issue are uniform in holding that a spouse's loss of consortium claim is subject to the "exclusive remedy" *865 provision of the worker's compensation statute. Joseph v. Texaco, Inc., 466 So.2d 575 (La.App. 5th Cir.1985); Theriot v. Damson Drilling Corp., 471 So.2d 757 (La.App. 3rd Cir.), writ denied, 472 So.2d 907 (La.1985); Minvielle v. Kaiser Aluminum, 766 F.2d 189 (5th Cir.1985); Redding v. Essex Crane Rental Corp., 500 So.2d 880 (La.App. 1st Cir.1986, writ denied, 501 So.2d 774 (La. 1987); Mundy v. Kulkoni, Inc., 503 So.2d 66 (La.App. 5th Cir.1987), writ denied, 506 So.2d 112 (La.1987).
However, Mrs. Vallery's claim for injury to her, i.e. exposure of Mrs. Vallery to HIV, is not an "injury" referred to in the worker's compensation statute. La.R.S. 23:1032 A(1)(a). It is self-evident that the worker's compensation scheme is to provide an exclusive remedy in the form of worker's compensation with regard to injuries to employees and not with regard to injuries to the spouses or other "dependents" or "relations" of employees. If Mrs. Vallery had been visiting her husband at work at the hospital, and a hospital employee had negligently injured both of them, no one would suggest that Mrs. Vallery's claim for her injury would be subject to the "exclusive remedy" provision of the worker's compensation statute even though her husband's claim would be.
In Adams v. Denny's Inc., 464 So.2d 876 (La.App. 4th Cir.1985), writ denied, 467 So.2d 530 (La.1985), we addressed an issue analogous to the present issue. The employee and her spouse sought damages from her employer for the death of their unborn child with which the employee was pregnant at the time of her accident at work. We held that the claim for the wrongful death of the pregnant employee's unborn child was not subject to the "exclusive remedy" provision of the worker's compensation statute.
Since the loss of the child is not an "injury" as defined by the compensation act, the exclusivity sections, 1032 and 1166, do not even purport to bar an action for such loss, any more than they would prevent an employee from recovering damage to or loss of property from his negligent employer outside of compensation benefits if, for instance, he was injured and his automobile wrecked while being driven by a co-employee and while both were engaged in the employer's business. Nor would the exclusivity provisions prevent a waitress and her husband from bringing a tort action for the loss of her infant child if, for instance, she had been permitted to bring the child to her place of work and while holding the child slipped and fell because of the employer's negligence with the result that the child was killed. No one could successfully argue that the employee's claim as to the car in the first instance or the claim for the death of the baby in the second constituted claims for "injury" which means violence to the "physical structure of the body" of the employee. The same reasoning applies to the unborn child who is a person, a human being, and not merely a piece of tissue from the mother's body.
464 So.2d at 877-78. Both the decision as to the actual facts and the hypothetical situations posed by the Adams court serve to emphasize that only the injury to the employee is the "injury" referred to in the worker's compensation statute.
Somewhat similar to our Adams decision is the First Circuit's decision in Cushing v. Time Saver Stores, Inc., 552 So.2d 730 (La. App. 1st Cir.1989), writ denied, 556 So.2d 1281 (La.1990). In that case, a pregnant employee fell, and an adding machine fell on her abdomen, as a result of the alleged negligence of her employer. Her child was born prematurely and suffered injuries as a result of the accident to the employee. The Cushing court held that the injured child's suit against the employer for those injuries was not barred by the exclusivity provision of the worker's compensation statute.
The Third Circuit's decision in Trahan v. Trans-Louisiana Gas Co., 618 So.2d 30 (La. App. 3rd Cir.1993) is also instructive and is somewhat more similar to the present case. In that case, a husband and wife brought suit against the husband's exposure to chemicals. One of the wife's claims was "that she sustained injuries from exposure to hazardous chemicals present on her husband's clothing". 618 So.2d at 32. The Trahan court, following Cushing, held that this claim of the wife was not subject to the exclusive remedy *866 provision of the worker's compensation statute.
Mrs. Vallery's claim is one for negligent infliction of emotional distress unaccompanied by any physical injury. While recovery for such claims has been controversial or limited by special rules in some jurisdictions, see Prosser and Keeton On Torts § 54 (5th ed. 1984), it is well established in this state's caselaw: See Chapetta v. Bowman Transportation, Inc., 415 So.2d 1019 (La.App. 4th Cir.1982); Carroll v. State Farm Ins. Co., 427 So.2d 24 (La.App. 3rd Cir.1983); Hoffman v. All Star Ins. Co., 288 So.2d 388 (La.App. 4th Cir.1974), writ denied, 290 So.2d 909 (La.1974).
In Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), our Supreme Court remarked: "Damages for mental pain and anguish are generally allowed in tort cases in Louisiana". 556 So.2d at 561. Justice Dennis, in Clomon v. Monroe City School Board, 572 So.2d 571 (La.1991), collected citations of numerous cases in this state "under which plaintiffs, who suffer no physical harm contemporaneous with the actionable act or omission, may recover for mental anguish resulting from a fear or fright over the plaintiff's own well being or from the damage to the plaintiff's property in view." 572 So.2d at 584.
In Moresi v. Dept. of Wildlife and Fisheries, 567 So.2d 1081 (La.1990), our Supreme Court limited recovery for negligent infliction of emotional distress to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." 567 So.2d at 1096. The Supreme Court identified one such type of case for which recovery would be allowed for negligent infliction of emotional distress as "cases allowing damages for fright or nervous shock, where the plaintiff was actually in great fear for his personal safety." 567 So.2d at 1096. Accord Bode v. Pan American World Airways, Inc., 786 F.2d 669, 672 (5th Cir.1986) (collecting Louisiana cases). A case in which a plaintiff alleges (and subsequently proves) a genuine and reasonable fear of contracting an incurable and fatal disease meets the Moresi requirements. We note that a clinical diagnosis of the harm suffered is not necessary to prove a claim of emotional distress. Blair v. Tynes, 610 So.2d 956 (La.App. 1st Cir.1992), reversed, 621 So.2d 591 (La.1993). In the analogous situation of fear of developing cancer due to the defendant's negligence, the Fifth Circuit has applied the Moresi decision and found the emotional distress of "cancerphobia" to be recoverable. Straughan v. Ahmed, 618 So.2d 1225 (La.App. 5th Cir. 1993). See also Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) (plaintiff's fear of cancer from radiation burn held recoverable); Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La. 1989) (plaintiff's justified fear of cancer from chemical exposure held recoverable).
While recovery for infliction of emotional distress due to exposure to HIV without infection is new to Louisiana caselaw, there have been a number of such decisions in other states which are instructive. One category of such decisions allows recovery for mental distress in factual situations in which HIV was present and in which there was a channel to the plaintiff for HIV infection. See Marriott v. Sedco Forex International Resources, Ltd., 827 F.Supp. 59 (D.Mass. 1993) (seaman inoculated with HIV-infected vaccine, seaman tested HIV-negative, seaman has cause of action); Johnson v. West Virginia University Hospitals, 186 W.Va. 648, 413 S.E.2d 889 (1991) (AIDS patient bites self then hospital security guard drawing blood each time, security guard did not contract AIDS, security guard has cause action against non-employer hospital with, "physical injury" requirement met by bite). Contra Petri v. Bank of New York, 153 Misc.2d 426, 582 N.Y.S.2d 608 (Sup.Ct. N.Y.Cty.1992) (plaintiff had sexual relationship with defendant who had tested HIV positive for three years but had not revealed that fact to plaintiff, plaintiff had not tested HIV positive, no cause of action because no physical injury).
Another category of such decisions involves situations in which HIV was present but in which there was no channel to the plaintiff for HIV infection. The decisions are *867 divided as to whether there is a cause of action in this factual situation. Compare Kerins v. Hartley, 17 Cal.App.4th 713, 21 Cal. Rptr.2d 621 (1993) (defendant HIV infected surgeon operated on plaintiff without disclosing HIV positive status, surgeon did not suffer any cuts and there were no unusual occurrences in surgery, plaintiff had a cause of action) (intentional tort); Faya v. Almaraz, 329 Md. 435, 620 A.2d 327 (1993) (defendant HIV-infected surgeon operated on plaintiffs without disclosing HIV positive status, proper barrier techniques used during surgery, plaintiffs had cause of action); with Funeral Services by Gregory, Inc. v. Bluefield Community Hospital, 186 W.Va. 424, 413 S.E.2d 79 (1991) (hospital sent corpse to mortician without warning of corpse's HIV infection, proper barrier techniques used during embalming, plaintiff mortician had no cause of actionJohnson decision contrasted); Ordway v. County of Suffolk, 154 Misc.2d 269, 583 N.Y.S.2d 1014 (Sup.Ct.Suff.Cty.1992) (plaintiff surgeon not told patient had AIDS, barrier techniques used and no cuts or unusual occurrences in surgery, plaintiff had no cause of action).
Lastly, there is a category of decisions in which there was a channel of exposure to the plaintiff but no proof that HIV was present. Some of these decisions, all involving accidental sticks with discarded hyperdermic needles when it was not known whether the needle had HIV or had been used on an HIV infected person, find a cause of action. Carroll v. The Sisters of Saint Francis Health Services, Inc., 61 U.S.L.W. 2291, 1992 WL 276717 (Tenn.App. Oct. 12, 1992); Marchica v. The Long Island Rail Road, 810 F.Supp. 445 (E.D.N.Y.1993); Castro v. New York Life Ins. Co., 153 Misc.2d 1, 588 N.Y.S.2d 695 (Sup.Ct.N.Y.Cty.1991). However, others of these decisions find no cause of action. Doe v. Doe, 136 Misc.2d 1015, 519 N.Y.S.2d 595 (Sup.Ct. Kings Cty.1987); Hare v. State of New York, 143 Misc.2d 281, 539 N.Y.S.2d 1018 (Ct. of Claims 1989); Burk v. Sage Products, Inc., 747 F.Supp. 285 (E.D.Pa. 1990); Neal v. Neal, 1993 WL 228394 (Idaho App.).
To recognize a cause of action in the situation of the third category of decisions, when the presence of HIV is not shown (or, at the pleading stage, alleged), is clearly unsound. Fear in such situations may be genuine but it is based on speculation rather than fact. However, in the present case, the patient who bled on Mr. Vallery is alleged to have suffered from AIDS, so the presence of HIV has been alleged.
It is a closer question as to whether, once the presence of HIV is proved, it is necessary that the plaintiff also prove the existence of a channel to the plaintiff for infection in order to recover. On this point the courts are divided as is shown in the above discussion of the second category of decisionsthose in which HIV was present but in which there was no channel of infection to the plaintiff. See Marriott, supra (collecting and comparing decisions). Nevertheless, we are convinced that the sounder view is that the plaintiff must prove a channel to the plaintiff for infection in order to recover for negligent infliction of emotional distress in a case involving fear of HIV infection. The existence of the channel for infection makes the threat of infection much more of a real possibility to be feared and far more than a speculative worry. Liability in the absence of a channel could provoke a flood of ill-justified litigation. Of course, it is the channel for infection, not actual HIV transmission or infection, which must be proven. It is common knowledge that HIV is not transmitted by casual contact, see e.g., Faya, supra, and that with proper barrier measures (gloves, protective garments, etc.) health care workers treat AIDS patients on a daily basis. In short, we find that fear in the absence of a channel to the plaintiff for infection, while perhaps genuine, is not sufficiently reasonable as a matter of law to impose liability.
It is not entirely clear from the allegations in the present case as to whether there was allegedly a channel for infection from the patient to Mr. Vallery and, thus, to Mrs. Vallery. In particular, the allegations are only that the patient bled onto Mr. Vallery's unprotected hand. There are no allegations that Mr. Vallery had any cuts, open sores or other breaks in his skin. Nor are there any allegations as to whether or not it *868 is possible that HIV infection can be transmitted by bleeding onto unprotected skin in the absence of cuts, open sores or other breaks in the skin. On the other hand, it is common knowledge that health care personnel use gloves and other protective garments to guard against HIV infection. Further, the hospital, in light of the patient's having bled onto Mr. Vallery's unprotected skin, felt it advisable to have Mr. and Mrs. Vallery HIV tested for a year and to counsel them to use condoms for a year. This suggests that the hospital, with its expertise, felt that there was at least some risk of HIV infection. In short, the issue of whether there was a channel for HIV infection must be decided at trial or, perhaps, on summary judgment. It seems likely that expert medical testimony will be necessary.
Lastly, we address the issue of causation. The particular complicating factor in this case is that it was Mr. Vallery, not Mrs. Vallery, upon whom the patient bled and whom the hospital personnel failed to warn. Under Louisiana's duty-risk analysis, which serves much the same function as the proximate cause analysis in other jurisdictions, there must be a four-prong inquiry:
1. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e. was it a cause-in-fact of the harm which occurred?
2. Did the defendant owe a duty to the plaintiff?
3. Was the duty breached?
4. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Roberts v. Benoit, 605 So.2d 1032 (La.1991). Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
The alleged wrongful conduct of the hospital, it will be recalled, was (1) failure to warn Mr. Vallery that the patient suffered from AIDS prior to Mr. Vallery restraining the patient and (2) failure to warn Mr. Vallery that the patient suffered from AIDS after the patient bled on Mr. Vallery and prior to the time Mr. and Mrs. Vallery had unprotected sexual relations. The first inquiry, cause-in-fact, is easily disposed of under facts as Mrs. Vallery has alleged them. Obviously there is a cause-in-fact relationship between the alleged wrongful acts and Mrs. Vallery's alleged emotional distress. The third inquiry, breach, is also easily disposed of under the facts as Mrs. Vallery has alleged them. If there is a duty of the hospital to Mrs. Vallery to exercise reasonable care to protect Mrs. Vallery from possible exposure to HIV, then the facts as alleged constitute a breach. The fourth inquiry also is easily answered. If there was a duty of the hospital to Mrs. Vallery to exercise reasonable care to protect Mrs. Vallery from possible exposure to HIV, then the risk and harm involved in this case are squarely within the ambit of that duty. In other words, the very purpose of the duty would be to prevent Mrs. Vallery's possible exposure to HIV, a sexually transmitted virus, in precisely the manner that occurred and to prevent the very emotional distress which occurred due to fear of contracting a fatal and incurable disease.
Thus, the crux of the causation issue is the second inquirydid the hospital owe a duty to Mrs. Vallery who, after all, was not even at the hospital? In deciding this issue, our Supreme Court emphasizes the degree of "ease of association" of the harm to the wrongful act. Roberts, 605 So.2d at 1045, 1054, 1055, 1057. Socorro, 579 So.2d at 939; Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 568-69 (La.1990). The foreseeability of the harm is a component, but not the sole factor, in the "ease of association" test. Roberts, id. at 1045, 1055.
The critical test in Louisiana, however, is phrased in terms of "the ease of association" which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant?
Roberts, Id. at 1054.
It is highly foreseeable that a security guard negligently exposed to HIV will be married and will have unprotected sexual relations with his wife unless promptly warned of his HIV exposure. Indeed, without timely warning, harm such as occurred in this case is quite probable. Moreover, policy considerations favor finding a duty of the hospital to Mrs. Vallery. AIDS is both incurable *869 and fatal and extraordinary efforts to prevent its spread should be the rule. A hospital, with its expertise, should be suited to take such preventive measures. Hospital employees should not become channels for infection to their spousesat least where a precaution as simple as a warning to don gloves or to use condoms would have served to prevent the harm.
Perhaps most importantly, there is an intuitive association between the failures to warn Mr. Vallery and the emotional distress which befell Mrs. Vallery. Between the wrongful act and the harm little intervened. The chain of causation is short, simple, direct and natural. See Roberts, Id. at 1058. (quoting Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues On Hill v. Lunden and Associates, 34 La.L.Rev. 1 (1973)).

Conclusion
We affirm the trial court's sustaining of the exception of no cause of action as to Albert Vallery's claims and the dismissal of those claims. We affirm the trial court's sustaining of the exception of no cause of action as to JoAnn Vallery's claim for loss of consortium and the dismissal of that claim. We reverse the trial court's sustaining of the exception of no cause of action as to JoAnn Vallery's claim for negligent infliction of emotional distress and we remand for further proceedings, consistent with this opinion, as to that claim.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
PLOTKIN, J., concurs with written reasons.
LANDRIEU, J., concurs and assigns additional reasons.
BYRNES and WARD, JJ., dissent.
PLOTKIN, Judge, concurs with written reasons.
Although I generally agree with the majority's conclusion that the petition filed by the plaintiffs in this case is sufficient to state a cause of action on Mrs. Vallery's part for negligent infliction of emotional distress, I find some of the language on the duty issue confusing. Further, I believe that the discussion of the duty issue by both of the dissents exacerbates the confusion. Thus, I would like to further address this issue.
As the majority notes, the Vallerys alleged two different negligent acts on the part of the hospital. Only the second of those acts is pertinent to the determination of whether Mrs. Vallery has a cause of action for negligent infliction of emotional distress caused by her fear that she would contract AIDS through her sexual contact with her husband after he was exposed to the disease. The act which Mrs. Vallery alleges lead to her damages was the hospital's failure to warn Mr. Vallery that he had been exposed to AIDS-infected blood prior to the time that she engaged in sexual relations with her husband. Mrs. Vallery does not seek to impose a duty on the hospital to warn a third party of Mr. Vallery's exposure to the virus; she does not cite a failure to actually warn her of the risk of possible harm; she cites only the failure to warn Mr. Vallery.
Nevertheless, both of the dissents are based, at least in part, on the belief that the hospital has no duty to warn a third party of the risks involved, saying that the duty is too "amorphous and nebulous" and could extend to too many categories of persons, once imposed. Although I might be inclined to agree with that proposition, that is not the problem in this case. The real question to be answered in this case is whether the hospital owes a duty to warn Mr. Vallery, so that he in turn either may warn those with whom he comes in contact or may refrain from contact which would place others at risk and therefore result in a fear of AIDS.
I believe that imposition of a duty to warn Mr. Vallery under the circumstances is entirely appropriate. Further, I believe, as the majority alludes, that the duty is broad enough to encompass the risk encountered by Mrs. Vallery in the instant case. Certainly the risk that the party exposed to the virus might have sexual contact without being aware of his exposure if not immediately warned of that exposure is foreseeable. Thus, I would find that the hospital does have a duty in this case and that the damages claimed by Mrs. Vallery are within the *870 ambit of that risk. Accordingly, I respectfully concur in the majority opinion reversing the trial court judgment granting the exception of no cause of action. I believe that the petition is sufficient to state a cause of action.
LANDRIEU, Judge, concurring and assigning additional reasons.
A wife has a right to know of her husband's exposure to HIV and a husband who has been exposed owes to his wife the duty to inform her. Here, it is alleged, Mr. Vallery was prevented from discharging his duty to his wife, and his wife was denied her right to know because the defendant did not timely inform either of them.
Defendant clearly had a duty to timely inform Mr. Vallery that he had been exposed so that he could take precautions not to expose his wife. Defendant's duty may or may not extend to someone other than Mr. Vallery's wife, but surely it extends to her.
Mrs. Vallery has stated a cause of action against the defendant by alleging that it failed to timely inform Mr. Vallery as a consequence of which she suffered damage.
BYRNES, Judge, dissenting.
I agree with Judge Ward. A cause of action for fear of AIDS from thirdhand exposure would create a scope of duty and ambit of risk that are so amorphous and nebulous that it would be impossible to quantify for liability purposes. Where insurance companies cannot quantify a certain risk, the cost of insurance can be out of all proportion to the risk. This would add another costly layer of inordinate expense to the treatment of AIDS without doing anything to advance the treatment of AIDS. From a public policy perspective, this would represent a very poor allocation of health care dollars at a time when money for AIDS is insufficient in particular, and the cost of health care in general is in crisis.
Such a cause of action would also work counter to public policy by creating a strong disincentive to provide treatment that would be unique to AIDS. This would represent a step backward from the progress that has been made in overcoming the image of the AIDS patient as the untouchable pariah. Hospitals will not do anything so obvious as putting up "NO AIDS Patients" signs. They will just subtly try to discourage them or refer them elsewhere. This will not advance society's interests in the treatment of AIDS. If we are to create a cause of action unique to AIDS it should at least advance societal interests.
For these reasons, I would affirm the judgment of the trial court.
WARD, Judge, dissenting.
Is fear of AIDS a distinct form of mental pain and suffering which is a compensable injury when it is caused by a hospital's negligence? I would hold it is not, and, I respectfully dissent from a majority opinion which finds that it is. I would uphold the trial court's ruling which held that Mrs. Vallery has no cause of action for negligently inflicted emotional distress.
Since this is an appeal of a trial court judgment upholding an exception of no cause of action, we must accept as well pleaded Mrs. Vallery's allegations that Baptist Hospital can be proven negligent under the following facts.
Mrs. Vallery's husband, Alfred Vallery, was employed as a security guard at Baptist Hospital. On March 10, 1991, while on duty, Vallery was called to subdue an unruly patient. In the course of calming the patient, some of the patient's blood splattered onto Vallery's left hand when an infusion needle dislodged from the patient's arm during his physical outburst. That night Vallery and his wife engaged in marital relations. The next day Vallery was informed that the patient he subdued had the AIDS virus. Baptist Hospital's administrator told Vallery that he would have to be tested for the virus after six months but within a year, as any earlier testing would not produce medically reliable results.
Alfred Vallery is covered by workers' compensation, and under these circumstances Alfred Vallery does not have a cause of action in tort because Baptist is immune from its employees' tort claims in negligence. Mrs. Vallery, however, claims damages in *871 tort alleging Baptist employees' negligence in exposing her husband to the virus and he in turn exposing her, caused her to suffer great emotional distress after her husband was exposed to HIV positive blood. Later, tests of Mrs. Vallery and her husband negated any infection, but she claims damages for the emotional distress caused by the fear that she may have been infected.
First, it is important to emphasize that this is not a derivative cause of action for loss of consortium as Baptist Hospital argues; nor is it a claim for mental pain and suffering because Mrs. Vallery witnessed a tortious act causing physical damages to her husband.
Mrs. Vallery makes a claim independent of any claim of her husband for her mental pain and suffering, under two theories; (1) negligent exposure to AIDS by secondary contact through sexual intercourse with her husband. (2) breach of a duty to warn her that she may be exposed to AIDS through intercourse and other contact with her husband. I do not believe either theory gives Mrs. Vallery a cause of action.
Does a hospital's duty to protect others from harm by a patient extend to the spouse or sexual partners of an employee to protect them from fear of AIDS?

Does a hospital owe a duty to warn a third party that their spouse or sexual partner who is an employee has been exposed to blood of an AIDS patient?
I believe the answer should be "no" to both questions.
I would hold as a matter of law that Baptist's duty in this case simply does not encompass the complained of risk. It may be simply explained that a hospital's duty to protect its employees and others from exposure to an AIDS patient's contaminated blood does not encompass the risk that the spouse or sexual partner of those negligently exposed will suffer from fear of AIDS which ultimately was proven unfounded. This type of injury should not be encompassed by this risk. If there is a duty, the class of persons protected by this duty should not be extended to a largely unknowable group who may claim "fear of AIDS" without fear of contradiction. To prove it does not exist would be impossible.
To place such a duty on hospitals would unduly expand their liability and perhaps deter them from readily accepting AIDS patients. If this duty is placed on hospitals, it will be virtually impossible for hospitals to discharge that duty when employees are in constant contact with AIDS patients. Hospitals simply cannot protect against the risk, they cannot eliminate the fear, which may be reasonable at the time but which turns out to be unfounded, as in this case.
I believe the majority errs by recognizing fear of AIDS as a separate class of mental pain and suffering. Other courts have held that fear of cancer is not separate and distinct from general mental anguish, pain, and suffering, Coffin v. Board of Supervisors, 620 So.2d 1354 (La.App. 2d Cir.1993), Hagerty v. L & L Marine Services, Inc., 788 F.2d 315, 217 (5th Cir.1986), and I would treat fear of AIDS in the same manner.
This means that a cause of action for a fear of AIDS just as any other claim for mental injury exists only in very limited circumstance, as when there is some trauma accompanying the mental injury or when someone witnesses a close relative suffer physical injury caused by negligence, within the limits set out in Lejeune v. Rayne Branch Hospital, 559 So.2d 539 (La.1990). Mrs. Vallery's consensual physical contact with her husband is not the type of physical trauma sufficient to state a cause of action for her emotional distress. Nor is this a case where Mrs. Vallery witnessed her husband suffer extreme physical injury. If Mr. Vallery tested positive for AIDS the case would be different.
Mrs. Vallery also alleges Baptist Hospital breached a duty to warn her that her husband had been exposed to the AIDS virus through a patient's contaminated blood. I do not believe Baptist Hospital has such a duty. I would also hold that when Baptist told Mr. Vallery that the patient had AIDS and that he should be tested within a year, Baptist fulfilled any duty to warn. From that time forward the duty to warn rested on Mr. Vallery. To place a duty on Baptist Hospital to warn others is impractical. To whom is this duty owed? If a spouse must be *872 warned, does the duty extend to other known sexual partners, married or unmarried, heterosexual or homosexual, casual or constant? How do you warn without creating fear? Would warnings of exposure to AIDS not cause mental anguish? and what if the warnings were given but the virus did not materialize?
To recognize fear of AIDS as a compensable injury under facts similar to this case, will undoubtedly expand the number of claims, and will positively exaggerate the danger to the general public. For these reasons, I would affirm the trial court ruling that Mrs. Vallery does not have a cause of action for this type of injury.
NOTES
[1] The hospital also filed an exception of no right of action which clearly is inapplicable.