729 So.2d 1169 (1999)
Susan Rome FALCON and Larry James Falcon, Individually and as the Natural Tutors of Jessica Falcon, Clay Falcon and Brook Falcon
v.
OUR LADY OF THE LAKE HOSPITAL, INC.
No. 98 CA 0714.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*1170 Keith D. Jones, Baton Rouge, for Plaintiffs-Appellants Susan Rome Falcon and Larry James Falcon, individually and as the natural tutors of Jessica Falcon, Clay Falcon and Brook Falcon.
T. MacDougall Womack, Robert W. Barton, Baton Rouge, for Defendant-Appellee Our Lady of the Lake Hospital, Inc.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
This is an appeal from the trial court's grant of summary judgment in favor of appellee, Our Lady of the Lake Hospital, Inc.,[1] dismissing the claims of appellants, Susan Rome Falcon and Larry James Falcon, individually and as the natural tutors of Jessica Falcon, Clay Falcon and Brook Falcon. We affirm.

FACTS AND PROCEDURAL HISTORY
The uncontested facts in this case are as follows. On December 23, 1993, Susan Rome Falcon (Mrs. Falcon) was admitted to Our Lady of the Lake Regional Medical Center (OLOL) for treatment of problems related to Crohn's disease. On December 30, 1993, at 5:30 p.m. and 5:32 p.m., respectively, two units of blood were collected at the OLOL Blood Bank from "directed donors"[2] for Mrs. Falcon. Mrs. Falcon was given two units of blood from the general OLOL Blood Bank inventory, instead of the "directed donor" blood, on January 4, 1994, when she underwent surgery.
According to Mr. David Gremillion, the supervisor of the OLOL Blood Bank, all blood received by the OLOL Blood Bank, whether from autologous,[3] homologous[4] or directed donors, is processed and tested in the same fashion. Mr. Gremillion stated under oath that the blood Mrs. Falcon received had been processed, screened and tested in the ordinary course of the OLOL Blood Bank's business, and the blood was negative for all the diseases tested.[5]
On November 20, 1996, appellants filed suit against appellee, alleging that appellee's actions amounted to negligence, which caused Mrs. Falcon to suffer physical pain and suffering, mental anguish and distress, and the loss of enjoyment of life. Additionally, appellants alleged that Mr. Falcon suffered loss of consortium, service and society of Mrs. Falcon, and their children suffered the loss of service and society of their mother. On December 10, 1996, appellee filed an answer, generally denying the allegations, and a reconventional demand, seeking payment for medical supplies, items and/or services from Mrs. Falcon. On February 10, 1997, appellee filed a motion for summary judgment. A hearing on the motion was held on April 14, 1997, and a judgment, dismissing appellants' suit with prejudice, was signed on July 1, 1997. From this judgment, appellants now appeal, assigning as error the trial court's finding that, on the facts presented, appellants did not state a cause of action.

*1171 SUMMARY JUDGMENT
Appellate courts are to review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, XX-XXXX-XX (La.2/13/98), 709 So.2d 753, 709 So.2d 754; Ebarb v. Guinn Brothers, Inc., 29,179, p. 3 (La.App. 2nd Cir.2/26/97), 691 So.2d 228, 230, writ denied, 97-1120 (La.6/13/97), 695 So.2d 981. A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. LSA-C.C.P. art. 966(A)(2). The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. However, LSA-C.C.P. art. 966, dealing with summary judgments, was amended by La. Acts 1996 (First Ex. Session), No. 9, effective May 1, 1996, to provide that the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2); Ebarb, 691 So.2d at 230.
In the 1997 Regular Session, the Louisiana legislature [again] amended the summary judgment law by amending and reenacting Sections C and E of La. C.C.P. art. 966 and by repealing Sections [F and G] of the article. 1997 La. Acts No. 483. In part, the purpose of these amendments was to clarify legislative changes made to La. C.C.P. art. 966 in 1996 (specifically, see 1996 La. Acts, 1st Ex.Sess., No. 9, § 1), and to set forth the burdens of proof which must be met by the respective parties when a motion for summary judgment is made. 1997 La. Acts No. 483, § 4. These burdens of proof are stated in Section C of amended La. C.C.P. art. 966, as follows:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
McDermott, 705 So.2d at 202.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
Appellants' claims are, in essence, claims for negligent infliction of emotional distress unaccompanied by any physical injury. While recovery for such claims has been controversial or limited by special rules in some jurisdictions, it is well established in this state's caselaw. Vallery v. Southern Baptist Hospital, 630 So.2d 861, 866 (La.App. 4th Cir.1993), writ denied, 94-0249 (La.3/18/94), 634 So.2d 860. In Louisiana, courts have allowed recovery for the negligent infliction of emotional distress, which causes only mental disturbance, without accompanying physical illness or other physical consequences, only when there is present "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi v. State Through Department of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990).
Although recovery for infliction of emotional distress due to the fear of exposure to HIV or other blood-borne illnesses is relatively new to the First Circuit, there are several cases from other circuits and other states that are instructive in this matter. For example, *1172 in Vallery, JoAnn and Albert Vallery brought suit against Southern Baptist Hospital after being exposed to the human immunodeficiency virus (HIV), which causes Acquired Immune Deficiency Syndrome (AIDS). Mr. Vallery, while a security guard at the hospital, was asked to help subdue a patient. While Mr. Vallery was restraining the patient, an intravenous needle became dislodged from the patient, and the patient bled on Mr. Vallery. Mr. Vallery, who was not informed that the patient had AIDS, had sexual relations with his wife after completing his shift. The following day, hospital personnel informed Mr. Vallery that the patient had AIDS. Mr. and Mrs. Vallery were both enrolled in a testing program and tested negative for HIV infection for more than two years.
The trial court maintained an exception of no cause of action filed by the hospital and dismissed the Vallery's claims as barred by worker's compensation. On appeal, the dismissal of Mr. Vallery's claim and any derivative claims (such as loss of consortium) of Mrs. Vallery was affirmed, but the dismissal of Mrs. Vallery's claims for her exposure to HIV was reversed. According to the appellate court, if Mrs. Vallery could demonstrate a "channel for infection," her claims might be viable. Vallery, 630 So.2d at 867-69.
In its discussion of the questions presented, the Vallery court outlined the three basic categories of decisions involving the "fear of AIDS" claims.
One category of such decisions allows recovery for mental distress in factual situations in which HIV was present and in which there was a channel to the plaintiff for HIV infection.
Another category of such decisions involves situations in which HIV was present but in which there was no channel to the plaintiff for HIV infection. The decisions are divided as to whether there is a cause of action in this factual situation.
Lastly, there is a category of decisions in which there was a channel of exposure to the plaintiff but no proof that HIV was present. Some of these decisions, all involving accidental sticks with discarded hyperdermic [sic] needles when it was not known whether the needle had HIV or had been used on an HIV infected person, find a cause of action. However, others of these decisions find no cause of action.
Vallery, 630 So.2d at 866-67 (citations omitted).
After discussing the three categories of cases that have been addressed by other courts, the Vallery court opined that there should be no cause of action in the third category of cases. According to the court, "[t]o recognize a cause of action in the situation of the third category of decisions, when the presence of HIV is not shown (or, at the pleading stage, alleged) is clearly unsound. Fear in such situations may be genuine but it is based on speculation rather than fact." Vallery, 630 So.2d at 867.
Another case that dealt with the fear of contracting AIDS is Bordelon v. St. Frances Cabrini Hospital, 93-1331 (La.App. 3rd Cir.5/4/94), 640 So.2d 476. The facts of Bordelon are similar to those in the present case. Prior to surgery, the plaintiff, Geraldine Bordelon, provided her own blood to the hospital in case it would be needed during surgery. However, during surgery she was mistakenly given someone else's blood. When she learned of the mistake, she suffered severe emotional anguish about the possibility of contracting AIDS. Ms. Bordelon sued the pathologist and the hospital. The hospital filed an exception of no cause of action, which the trial court granted, ruling that plaintiff had failed to state a cause of action because she did not allege that she suffered any physical injury.
This judgment was reversed on appeal. According to the appellate court, Louisiana jurisprudence allows for a claim of negligent infliction of emotional distress without an accompanying physical injury. Bordelon, 640 So.2d at 478. Then, reviewing the allegations in Mrs. Bordelon's petition under the duty-risk analysis, the court determined that she had stated a cause of action under LSC.C. art. 2315.
Clearly, the Bordelon case would fall under the third category of cases; there was a channel of exposure, i.e., the blood transfusion, *1173 but no showing that HIV was present. Thus, it would appear that the Third and Fourth Circuits differ as to whether a viable cause of action exists under the third category. Nevertheless, further review of subsequent Third Circuit cases lead us to conclude, as did the Vallery court, that allowing for a cause of action under the third category would be unsound.
In Walker v. Allen Parish Health Unit, 97-1007 (La.App. 3rd Cir.4/1/98), 711 So.2d 734, writ denied, 98-1698 (La.10/9/98), 727 So.2d 440;, plaintiffs, Lori and Marlan Walker, brought suit, on their own behalf and on behalf of their minor child, against the State of Louisiana, through the Department of Health and Hospitals (DHH) and Allen Parish Health Unit after their twenty-eight month old child placed his hand in a "sharps" container and pricked his finger with the needle of a used vaccination syringe. Thereafter, the child was periodically tested for hepatitis and AIDS. All tests were negative. DHH and the health unit filed a motion for summary judgment, which was granted as to plaintiffs' claim but denied as to the child's claim.
On appeal, the appellate court affirmed, finding that the harm suffered by the Walkers was not genuine and serious. In light of evidence submitted in support of the motion, the Walkers' fear that their child, who had tested negative for the disease for six years, would contract AIDS was unreasonable. According to the court, the emotional distress suffered by the Walkers did not reach the level of seriousness established in the Moresi case. Walker, 711 So.2d at 737.
Although not a "fear of AIDS" case, Boutin v. Oakwood Village Nursing Home, 96-1579 (La.App. 3rd Cir.4/2/97), 692 So.2d 1289, writ denied, 97-1165 (La.6/20/97), 695 So.2d 1358, which involved the fear of contracting a contagious disease, is analogous to the "fear of AIDS" cases. In Boutin, the plaintiff brought suit, individually and on behalf of her minor sons, against the nursing home after she and her children visited her grandmother, who had MRSA, a bacterial infection. The trial court granted the defendant's motion for summary judgment, and plaintiff appealed.
On appeal, the trial court judgment was affirmed. Citing Vallery, the appellate court stated that to prove her case plaintiff must show a channel of infection, which plaintiff failed to do. See Boutin, 692 So.2d at 1291. According to the court, there was no material issue of fact remaining because the plaintiff neither alleged nor showed a channel of infection by which she or her sons could have contracted MRSA.
From these cases we glean that in order to establish a cause of action, a plaintiff must be able to demonstrate the presence of HIV (or other blood-borne and/or contagious disease) and a channel of exposure or infection. Absent such a showing, a plaintiffs fear of contracting HIV (or other serious illness) would be speculative and not sufficiently reasonable as a matter of law to impose liability.
In the present case, the evidence introduced in support of the motion for summary judgment clearly indicates that the blood received by Mrs. Falcon tested negative for HIV and hepatitis, and appellants did not offer anything to controvert this evidence. Therefore, this case falls into the third category of "fear of AIDS" decisions. Furthermore, because the presence of HIV is not shown, we, like the Vallery court, believe it would be unsound to recognize a cause of action in this case.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, granting summary judgment in favor of appellee, Our Lady of the Lake Hospital, Inc. is affirmed. All costs of this appeal are assessed to appellants, Susan Rome Falcon and Larry James Falcon.
AFFIRMED.
PETTIGREW, J., concurs.
FITZSIMMONS, Judge, concurs and assigns reasons.
FITZSIMMONS, J., concurring, with reasons.
I respectfully concur in the result. However, the result, in my opinion, may have *1174 been different if the suit had been brought in contract.
NOTES
[1] Although "Our Lady of the Lake, Inc." was named by the plaintiffs in their petition for damages, we note that the correct name, as reflected by the record, is "Our Lady of the Lake Hospital, Inc."
[2] A "directed donor" is one who donates blood that is "earmarked" for a particular patient and that is a compatible blood type to the patient's blood type. The blood is held in reserve for the designated patient.
[3] "Autologous" blood is donated blood that is given by the recipient patient himself prior to a surgery he is scheduled to undergo.
[4] "Homologous" blood is any blood in the general blood bank that is not set aside as "autologous" or "directed donor" blood.
[5] According to Mr. Gremillion the testing performed on all donated blood includes the following tests: Hepatitis B Surface Antigen, Hepatitis B Core Antibody, Hepatitis C Virus Antibody, HTLV I, HIV I Antibody, Antibody Screen, HCV Antibody, RPR, ABO, ALT, Blood typing and Rh typing.