Della ZACHARY, et al.

v.

DOW CORNING CORPORATION, et al.

Civ. A. No. 92–741–B–1.

United States District Court,
M.D. Louisiana.

March 23, 1995.

Xenia H. Tillery, Tillery, Cavanaugh & Tillery, Baton Rouge, LA, for plaintiffs.

Charles F. Gay, Jr., Adams & Reese, New Orleans, LA, for defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT [1]

RIEDLINGER, United States Magistrate Judge.

This matter is before the court on a motion for summary judgment filed by the defendants, Dow Corning Corporation and Dow Corning Wright Corporation. The motion is opposed.

This products liability action based on Louisiana law was filed by the plaintiffs, Della and Houston Zachary.[2] Plaintiff Della Zachary sustained an injury to her right wrist in 1984 and subsequently underwent wrist surgery on January 21, 1986.[3] Dr. Joe Morgan performed a right wrist arthroplasty and implanted a total wrist prosthesis. The device implanted was a Dow Corning (IW-wrist

---

1. All the parties to this proceeding have consented to proceed before the magistrate judge. *See,* record document numbers 31 and 32.

2. There are two plaintiffs. Defendants' motion relates to the claims of Della Zachary.

3. Exhibit P–1.

joint H.P.) Swanson design, #488–1W, lot #HH035231. Plaintiff claimed that at the time of her surgery she was not informed of any potential health hazards associated with the use of the implant. In early 1992 the plaintiff saw Dr. Andrew Kucharchuk and complained of wrist pain and on March 4, 1993 the implant was removed by Dr. Kucharchuk.[4]

Plaintiff alleged that the prosthetic device was unreasonably dangerous in construction or composition under LSA–R.S. 9:2800.55 and that the defendants were also liable under LSA–R.S. 9:2800.57 for inadequately warning of the dangers of silicone synovitis, a condition they knew of at the time of manufacture. Plaintiff claimed that had she been adequately warned of the risk of silicone synovitis she could have made an informed decision about whether to use the implant. Plaintiff alleged that she fears she may develop cancer as a result of the deterioration of the silicone implant and that this fear has caused her great emotional distress. Plaintiff also sued under the theory of redhibition, asserting that the device was defective at the time it was manufactured.

Defendants relied upon deposition excerpts, affidavits and other exhibits to establish that they are entitled to judgment as a matter of law. Based on the summary judgment record the defendants contended that there is no evidence that the implant contained any manufacturing or material defects.[5] Defendants argued that under the "learned intermediary doctrine" the plaintiff has no evidence to show that the warning provided to the doctor who implanted the device was inadequate. Defendants pointed out that the warning included with its implant specifically warns of the potential problem of synovitis, and that in 1986 doctors were also aware of the risk.[6] Moreover, the defendants contended that there is no evidence that the plaintiff suffered from silicone synovitis, the disease she alleges she was not

adequately warned about.[7] Finally, the defendants argued that the plaintiff suffered no damage from the implantation of the prosthesis because there is no evidence she had silicone synovitis, and the evidence shows that her wrist is now in the condition it was in prior to the implant surgery.

In their supplemental memorandum the defendants contended that there is no evidence the implant fractured, and pointed out that the plaintiff offered no evidence to contradict the report of Dr. Ferguson. Defendants asserted that the plaintiff has no evidence that the warnings which accompany the implant did not reach Dr. Morgan, the physician who implanted the device, and there is no evidentiary or legal basis for the plaintiff's assertion that she has a claim for fear of future cancer. Defendants submitted that the Louisiana Products Liability Act (LPLA) is plainly applicable to this action.

Summary judgment is only appropriate when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact, and that it is entitled to judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–29, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Rule 56(c), Fed.R.Civ.P. If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a "fair-minded jury" that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). After adequate time for discovery, Rule 56 mandates the entry of summary

---

4. Exhibit P–12.

5. Defendants relied upon the affidavit of Dr. Eldon E. Frisch, Exhibit D–6.

6. For this argument the defendants relied upon the affidavit of Dr. Gordon B. McFarland, Exhib-

it D–4; deposition excerpts of Dr. Andrew Kucharchuk, Exhibits D–1 and D–3.

7. Defendants relied upon deposition excerpts of Dr. Kucharchuk, Exhibit D–1; Dr. Joe A. Morgan, Exhibit D–2; and Dr. Daniel L. Ferguson, Exhibits D–7 and D–5.

judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 321–23, 106 S.Ct. at 2552.

### A. Louisiana Products Liability Act Claim

■ The substantive law identifies which facts are material. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994). The applicable substantive law in this case is the LPLA, LSA–R.S. 9:2800.51, et seq. The LPLA took effect on September 1, 1988, and while procedural aspects apply retroactively, its substantive provisions apply prospectively only. *Horton v. Buhrke*, 926 F.2d 456, 458 (5th Cir.1991). Plaintiff argued that the LPLA is inapplicable because the cause of action accrued before the effective date of the act, i.e., the wrongful act occurred when the prosthesis was implanted in 1986, but the defect was not discovered until 1992.

■ Under Louisiana law a cause of action accrues when the party has the right to sue. For a negligence cause of action to accrue, three elements are required—fault, causation and damages. *Cole v. Celotex Corp.*, 599 So.2d 1058, 1063 (La.1992); *Trahan v. Liberty*, 314 So.2d 350, 353 (La.1975).

■ Plaintiff argued that the cause of action accrued at the time of implant surgery which was over two years before the LPLA took effect. Apparently the contention underlying this argument is that the implant was defective when implanted. However, the plaintiff has pointed to no evidence to support such a theory, and has not submitted any evidence of damages suffered at that time or at any time prior to September 1, 1988. The damages alleged by the plaintiff did not occur until after the effective date of the LPLA. Plaintiff alleged and it is undisputed that she did not complain of problems with her wrist until February or March of 1992.[8] Thus, the facts which gave rise to the fault and damages alleged by the plaintiff,

and gave her the right to judicially assert a cause of action did not occur until 1992, well after the effective date of the LPLA.

### Unreasonably Dangerous in Construction or Composition

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LSA–R.S. 9:2800.55. Defendants contended that there is no evidence to create a genuine issue for trial on the question of whether the implant had a defect in construction or composition under section 9:2800.55.

■ Defendants submitted the affidavit of Eldon E. Frisch,[9] who examined and tested the prosthesis removed from the wrist of the plaintiff. In his affidavit Frisch described the various tests he performed on the wrist implant and gave the results of those tests. The prosthesis showed signs of wear and distortion through use, but the tests revealed no knit lines, inclusions, voids, bubbles, areas of incomplete mold fill or other manufacturing related abnormalities. The examination revealed no evidence of manufacturing or materials defects and all specifications were in accordance with manufacturer guidelines. Plaintiff responded by stating that Frisch was not a disinterested, unbiased expert because he worked for Dow Corning in developing and implementing the manufacturing procedures associated with silicone elastomer implants. *See,* Exhibit P–14. Plaintiff noted that Frisch did not say anything in his affidavit about the failure of the implant which is evidenced by the fractured implant.[10] Plaintiff asserted that his failure to address this point causes his entire affidavit to be suspect.

Plaintiff attacked the affidavit of Frisch but failed to offer any evidence to contradict

---

8. Exhibit D–1, p. 25.

9. Exhibit D–6.

10. Plaintiff submitted the implant itself in opposition to the defendants' motion. *See,* Exhibit P–12.

or call into question the methods he used. His affidavit cannot be disregarded simply because the plaintiff alleges that he is biased. Moreover, the plaintiff offered no evidence to refute the facts and conclusions set forth in his affidavit. Plaintiff's assertion that Frisch did not address the alleged failure of the implant, as evidenced by the fractured implant, is without merit. First, there is no evidence in the summary judgment record to support the assumption underlying this argument—that the implant was fractured. Plaintiff's submission of the implant itself as evidence of a fracture is unavailing. Whether or not the implant was in fact fractured is not something that can be determined without expert testimony. No such evidence was offered, and the plaintiff did not contend that there was any reason this type of evidence was not obtainable during discovery. Frisch stated, and defendants do not dispute, that the implant exhibited signs of wear and distortion through use. However, plaintiff did not offer any evidence that the wear and distortion noted by Frisch was a fracture, or any evidence that wear and distortion through use, or even a fracture, indicates or establishes that the implant was defective in construction or composition.

Accordingly, summary judgment is appropriate as to the plaintiff's claim under section 9:2800.55 that the wrist implant was unreasonably dangerous in construction or composition.

***Unreasonably Dangerous Because of Inadequate Warning***

 Under LSA–R.S. 9:2800.57 a product is "unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." Louisiana law applies the "learned intermediary doctrine" to claims of a failure to warn involving drugs

or medical devices which are dispensed by a physician.[11] The learned intermediary is the one to whom the warning is directed and is the one who makes the decision whether to use the product. Therefore, the duty to warn in the learned intermediary context requires an adequate warning of inherent dangers not within the knowledge of or obvious to the average learned intermediary. *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99, n. 16 (5th Cir.1991). To recover for failure to warn under this doctrine, a plaintiff must show: (1) that the defendant failed to warn the physician of a risk associated with use of the product not otherwise known to the physician; and (2) that the failure to warn the physician was both a cause in fact and proximate cause of the plaintiff's injury. Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician; but for the inadequate warning, the treating physician would not have used or prescribed the product. *Willett*, at 1098; *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343 (5th Cir.1994).

 After review of all the evidence in light of the applicable law summary judgment is appropriate on this issue. The evidence is not of sufficient caliber or quantity for a reasonable trier of fact to conclude that the defendants failed to warn physicians about the potential injury the plaintiff claimed to have suffered, silicone synovitis. Dr. Morgan, who implanted the prosthesis but did not remove it, testified that a diagnosis of silicone synovitis would be made by sending the tissue to a pathology laboratory for examination. To confirm the diagnosis one would look for foreign body reactive changes, specifically giant cell reaction. Exhibit D–2, pp. 26–27.[12] Dr. Kucharchuk testified that at the time of the surgery to remove the implant he thought the plaintiff had silicone synovitis, but that he could not make such a diagnosis just by looking at the tissue. A definitive diagnosis would have to be made

**11.** *See, Davis v. Avondale Industries, Inc.*, 975 F.2d 169, 173, n. 2 (5th Cir.1992) (after the enactment of LSA–R.S. 9:2800.57 Fifth Circuit has applied learned intermediary doctrine).

**12.** Dr. Morgan reviewed the pathology report in his deposition and stated that it did not describe giant cell reaction. Exhibit D–2, pp. 29–30.

by a pathologist. Exhibit d–1, pp. 38, 46–47, 71. Dr. Kucharchuk testified further that the pathology report noted chronic reactive changes, but no specific signs of silicone synovitis. Furthermore, he stated that if the pathologist had seen giant cells he would have put it in the report. Exhibit D–1, pp. 44, 71–72.

Defendants also relied on the pathology report of Dr. Ferguson. His final diagnosis was: "[r]ight wrist implant, and synovium cartilage and bone, with chronic reactive changes."[13] There is no mention in the report of silicone synovitis. Plaintiff attempted to create a genuine issue on the question of whether the plaintiff had silicone synovitis by relying on deposition testimony of Dr. Kucharchuk and attacking the report of Dr. Ferguson. Plaintiff cited Dr. Kucharchuk's testimony that he talked to Dr. Ferguson who said it looked like a reactive synovitis secondary to the implant, but that he did not call it silicone synovitis. Exhibit P–17, p. 75. Plaintiff also contended that Dr. Ferguson's lack of experience with silicone synovitis made his findings inconclusive as to whether the plaintiff had the condition.

These arguments and the evidence relied upon are insufficient to create a genuine dispute for trial. Plaintiff raised questions as to the expertise and findings of Dr. Ferguson but offered no evidence to contradict his findings and diagnosis.[14] The testimony of Dr. Kucharchuk is not evidence from which a fair-minded jury could find that the plaintiff had silicone synovitis. It is hearsay and there is no report or deposition testimony from Dr. Ferguson which states that the synovitis was secondary to the implant. Moreover, even if accepted as true it is not a statement that the plaintiff had silicone synovitis, and the plaintiff submitted no evidence that such a statement could be equated to a diagnosis of silicone synovitis. As an expert Dr. Kucharchuk could rely on hearsay state-

ments of other physicians in forming an opinion as to the plaintiff's condition. Yet as already stated, Dr. Kucharchuk testified that he could not determine whether the plaintiff had silicone synovitis. He noted in his deposition that chronic reactive changes could occur from causes other than silicone[15] and testified that diagnosis of silicone synovitis would have to be made by the pathologist. Dr. Kucharchuk stated unequivocally that the pathology report would contain the definitive diagnosis. The report of Dr. Ferguson did not indicate silicone synovitis, only "chronic reactive changes." Defendants also submitted the affidavit of Dr. McFarland, a board certified orthopaedic surgeon with a specialty in hand surgery, who stated that he reviewed the plaintiff's medical records, including a March 24, 1992 bone scan and the pathology report of Dr. Ferguson, and concluded that they failed to establish a diagnosis of silicone synovitis.[16]

Plaintiff argued that even if she did not have true silicone synovitis, she had the fear of developing cancer from the wrist implant.[17] Plaintiff cited *Straughan v. Ahmed,* 618 So.2d 1225 (La.App. 5th Cir.1993), *cert. denied,* 625 So.2d 1033 (La.1993), and stated that this case recognized a cause of action for mental distress where cancerphobia develops and allowed recovery of damages for emotional distress. In *Straughan,* the court determined that the plaintiff could recover damages for emotional distress where she developed cancerphobia due to the negligence of her physician. The case involved a claim for medical malpractice and the physician had been found negligent. By comparison, this is a products liability action in which there is no evidence that the product was defective in composition, and insufficient evidence to maintain a claim for failure to warn. Plaintiff does not explain how, in the absence of competent summary judgment evidence

---

13. Exhibit P–13.

14. *See,* Exhibit P–20, pp. 16–17. Dr. Ferguson testified that he did not have any experience with silicone synovitis, but was familiar with giant cell reaction and probably would have noted it in his report if he had seen it in examining the material.

15. Exhibit D–1, p. 71.

16. Exhibit D–4.

17. For this argument the plaintiff relied on excerpts of her deposition testimony and the testimony of Dr. Kucharchuk. *See,* plaintiff's memorandum, p. 14, record document number 40.

that the defendants were negligent, she can have some claim for mental distress due to cancerphobia. This argument and evidence cannot preclude summary judgment in the defendants' favor.

■ In her complaint the plaintiff alleged only that the implant was defective in construction or composition and that the defendants failed to adequately warn of the dangers of silicone synovitis. Plaintiff appears now to also argue that the defendants failed to adequately warn that the implant was subject to fracturing or breaking. *See*, plaintiff's memorandum, p. 4, record document number 40. Assuming such a claim, there is also no evidence from which a reasonable jury could conclude that the implant fractured. Frisch stated that the implant exhibited signs of wear and distortion through use, but did not state that the implant was "fractured." Dr. Kucharchuk testified that when the plaintiff presented with complaints about her right wrist he felt that possibly the prosthesis might be broken. Exhibit D–1, p. 26. He testified that upon removal it was "not completely broken," or was "about ready to break." Exhibit D–1, p. 38. This is not evidence from which one could reasonably infer that the implant was fractured or broken. Analysis of the implant after its removal failed to disclose any fracture. Moreover, there is also a total absence of evidence that an alleged "fracture" of the implant caused injury to the plaintiff.

In light of the summary judgment record it is unnecessary to determine whether the defendants had a duty to warn learned intermediaries of silicone synovitis or the possibility of fracture, or if they had such a duty whether the warning given was adequate to inform them of these risks. At trial in order to establish negligence and causation the plaintiff would have to present sufficient evidence to enable a reasonable jury to find that she had the conditions for which she claims the defendants failed to provide adequate warnings. A review of the summary judgment record establishes that the plaintiff cannot present evidence from which a fair-minded jury could draw such a conclusion. There is no genuine dispute for trial and the defendants are entitled to judgment as a matter of law on the plaintiff's claim that the implant was unreasonably dangerous because of inadequate warning.[18]

### B. Redhibition Claim

■ Plaintiff pointed out that the defendants have not moved for summary judgment as to her redhibition claim. *See*, Louisiana Civil Code Article 2545. In their supplemental memorandum the defendants did not address this argument except to argue that the LPLA is applicable to this action. A review of paragraph 13 of the complaint showed that the plaintiff did assert a cause of action in redhibition, alleging that the implant was defective at the time of its manufacture. The summary judgment evidence failed to disclose any defect existing in the implant at the time of its manufacture. Defendants are entitled to summary judgment as a matter of law on the plaintiff's redhibition claim. However, sua sponte summary judgment may not be granted on grounds not urged by the moving party, unless the non-moving party receives notice and is given an adequate opportunity to respond. *Evans v. United Air Lines, Inc.*, 986 F.2d 942 (5th Cir.1993); *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 79 (5th Cir.1992); *John Deere Co. v. American National Bank*, 809 F.2d 1190, 1191–92 (5th Cir.1987).

Accordingly, the motion for summary judgment filed by the defendants Dow Corning Corporation and Dow Corning Wright is granted as to the plaintiff's claims under the LPLA.[19]

Plaintiff shall have ten days from this date to oppose entry of summary judgment in

---

18. Plaintiff stated in her memorandum that there was a genuine issue for trial as to whether the implant was defective in its design, composition or construction. Plaintiff did not allege a defect in design in her complaint, or argue this theory in her opposition. There was no summary judgment evidence presented on a defective design claim under section 9:2800.56.

19. Summary judgment for the defendants necessarily requires dismissal of plaintiff Houston Zachary's claim, apparently for loss of consortium under Louisiana Civil Code Article 2315.

favor of the defendants by demonstrating the existence of a disputed issue of material fact or an adequate legal basis to maintain her redhibition claim.