1 iPEATROSS, J.
In this negligence action, Plaintiff, Peggy Swindle (Ms. Swindle), appeals the jury’s verdict in favor of Body Blasters Gym, Inc. (Body Blasters) finding Body Blasters was not negligent; the jury found that Body Blasters adequately warned Ms. Swindle of the dangers of exposure to the ultraviolet light in a tanning bed when taking certain medications. For the reasons stated herein, we affirm.

FACTS

On April 4, 1994, Ms. Swindle joined Body Blasters, a local fitness center in Shreveport; and, on that date, she executed a contract which allowed her to use Body Blasters’ workout facilities and equipment. Body Blasters also offers tanning facilities, and in May 1994, Ms. Swindle decided to utilize the gym’s tanning bed. Her first exposure was on May 31, 1994. Ms. Swindle then prepaid for 300 minutes of tanning. On June 1, June 2, June 3 and June 5 she had tanning sessions without incident. On June 8, 1994, however, Ms. Swindle tanned a sixth time, and shortly after completing this tanning session, she noticed that her skin was purple. Dr. Jack Resneck, a local dermatologist, diagnosed Ms. Swindle with vasculitis related to her exposure to the ultraviolet light. At the time of her sixth tanning session, Ms. Swindle had been prescribed six different medications: Lortab/Lorcet, Phenergan, Est-race, Soma, Mepergan and Aldactazide.
At the close of Plaintiffs evidence, the trial court granted Body Blasters’ motion for directed verdict dismissing Plaintiffs claim that the tanning bed was defective or unreasonably dangerous. Only the issue of the adequacy of Body Blasters’ warning, concerning tanning while on medication, went to the jury. The jury found in favor of Body Blasters and it is from that verdict that Ms. Swindle appeals.

*979
J¿DISCUSSION

At trial, Ms. Swindle denied ever having seen or received any Warnings relating to the dangers of tanning while taking certain medications. On appeal, however, Ms. Swindle, apparently now conceding the existence of warnings, complains that the warnings given were inadequate. Since Body Blasters’ Rules and Regulations, which contained warnings concerning tanning, did not contain the exact language of the Tanning Facility Regulation Act (TRFA), Ms. Swindle asserts that (1) Body Blasters was not in compliance with the statute and such noneompliance is negligence per se; and (2) Body Blasters is, therefore, liable because Body Blasters’ negligence was the cause of her condition. Ms. Swindle’s claim fails on both counts.

NEGLIGENCE OF BODY BLASTERS

Whether a particular warning is adequate is a question for the trier of fact. Bloxom v. Bloxom, 512 So.2d 839 (La.1987); Cannon v. Cavalier Corp., 572 So.2d 299 (La.App. 2d Cir.1990). A court of appeal may not set aside a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Section 2702 of the TRFA includes the legislature’s finding that “[c]ertain medications, cosmetics, and foods are ‘photosensi-tizing’, which means that in some people they react unfavorably to ultraviolet light, producing skin rashes or burns.” Section 2714 of the TRFA provides that:
IgA. The tanning facility operator shall provide each consumer, receipt of which is acknowledged by the consumer, prior to initial exposure, a written statement warning that:
(4) Abnormal skin sensitivity or burning may be caused by reactions of ultraviolet light to certain:
(C) Medications, including tranquilizers, diuretics, antibiotics, high blood pressure medicines, and oral contraceptives.
Section 2710 of the TRFA provides the language for warning signs at a tanning facility:
B. The sign required by this Section shall be printed in upper and lower case letters which are at least one-half inch and one-quarter inch in height, respectively, and shall contain the following warnings:
“DANGER — ULTRAVIOLET RADIATION
—Follow Instruction.
—Avoid overexposure. As with natural sunlight, repeated exposure to ultraviolet radiation can cause chronic sun damage characterized by premature aging of the skin, wrinkling, dryness, fragility and bruising of the skin, and skin cancer.
—Wear protective eyewear.
FAILURE TO USE PROTECTIVE EYEWEAR MAY RESULT IN SEVERE BURNS OR PERMANENT INJURY TO THE EYES.
—Medications or cosmetics may increase your sensitivity to the ultraviolet radiation. Consult a physician before using sunlamp or tanning equipment if you are using medications or have a history of skin problems or believe that you are especially sensitive to sunlight. Pregnant women or women taking oral contraceptives who use this product may develop discolored skin.
IF YOU DO NOT TAN IN THE SUN YOU ARE UNLIKELY TO TAN FROM THE DUSE OF ULTRAVIOLET RADIATION OF TANNING EQUIPMENT.”
The contract executed by Ms. Swindle on April 4, 1994, contained an acknowledgment of her receipt of Body Blasters’ Rules and Regulations. Paragraph No. 4 of the “Tanning Rules” reads in pertinent part:
*980 Tanning beds may cause adverse reactions when combined with some medications. Please consult your physician.
Ms. Swindle acknowledged, by her signature on the contract, receipt of the above written rules prior to her initial exposure in the tanning bed. As previously stated, Ms. Swindle asserts that because the language of Body Blasters’ warning was not identical to the language of the statute, the warning was inadequate. We disagree.
The legislature clearly expressed its concern for the safety of tanning facility operations by finding that certain medications may cause photosensitive reactions when the individual is exposed to ultraviolet light. It is certainly not possible for the statute to list all medications which have potential photo-toxic effects, and we believe that the legislature’s concern is addressed by the warning as given by Body Blasters in its Rules and Regulations. The warning advised that some medications may cause adverse effects under exposure to ultraviolet light and advised the customer to consult a physician. We find the warning to be adequate to alert someone who is taking medication to seek further medical advice prior to exposing themselves to the ultraviolet light in a tanning bed. Reading Section 2714 alone, we find no indication in the plain language of the statute that the warning must track the statutory language verbatim. Moreover, laws on the same subject are to be read and interpreted in pari materia. La. C.C. art. 13. Reading Sections 2710 and 2714 in reference to each other, we find that, unlike Section 2714 of the statute dealing with written warnings, Section 2710, dealing Rwith warning signs, sets off the required warning in quotation marks, clearly indicating the legislature’s intent that tanning facilities track the statutory warning verbatim. As such, we find that the written warning provided Ms. Swindle prior to her first exposure was adequate under the TRFA despite its failure to use the exact wording provided in the statute; and, therefore, Body Blasters was not negligent.
In addition to the written warning contained in Body Blasters’ Rules and Regulations, the evidence showed that, at the time of the discovery of Ms. Swindle’s condition, there was a warning label on the tanning bed itself, located just above the handle, a warning sign posted on the door of the tanning room and a large warning sign posted on the wall of the tanning room. The language of the warning label and signs at Body Blasters was identical to the statutory language as required by Section 2710.
At the same time that Ms. Swindle signed the contract to join Body Blasters, she was given a health questionnaire to fill out which inquired about her medical history and specifically asked her to list all medications she was taking at that time. Keith Meadows, manager and part-owner of Body Blasters, testified that this information was necessary in order that he be able to ensure that the customer receive appropriate training and guidance from Body Blasters’ trainers and employees. This guidance was not limited to physical training but included safe use of the tanning facility as well. Ms. Swindle, however, only partially filled out the health questionnaire. She left the sections concerning present symptoms and medications completely blank, despite the fact that she was currently the plaintiff in a lawsuit wherein she claimed neck and back injuries, had recently undergone a hysterectomy and had been prescribed at least six different medications. Mr. Meadows testified that Ms. Swindle’s failure to disclose her 1 ephysical condition and medications led him to believe that she had no present symptoms and was not taking any medications. In addition, the day after her last tanning session, Ms. Swindle telephoned Dr. Tandy McElwee’s[1] office and inquired as to whether any of the medications could have caused her condition.
Our review of the record reveals that Ms. Swindle was provided at least three warnings concerning safe use of the tanning bed at Body Blasters, including warnings related to use of the tanning bed while taking medication. We find that the evidence clearly supports a finding that Ms. Swindle was adequately warned about, and was actually aware of, the dangers of tanning while taking medications. Despite the fact that the writ *981 ten warning contained in Body Blasters’ Rules and Regulations was not identical to the language used in the statute, we cannot say that the trial court was clearly wrong in finding these numerous warnings adequate.

CAUSATION

Additionally, we find that Ms. Swindle failed to prove that any alleged negligence on the part of Body Blasters caused her condition. Even if we were to find Body Blasters negligent by virtue of its noncompliance with the TRFA, Ms. Swindle must show that the violation was the cause-in-fact and the legal cause of her condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Poland v. Glenn, 623 So.2d 227 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 1171 (La.1993).
Ms. Swindle relies exclusively on Dr. Res-neck’s testimony to support the assertion that her condition was the result of a photosensitive reaction to the ultraviolet light of the tanning bed due to medications she was taking at the time of pthe condition became apparent. A review of Dr. Resneek’s entire testimony, however, simply does not support such a finding. Dr. Resneck testified:
Q: And if all other customers or patients of a doctor didn’t get burned [on the same day] and [the tanning bed is] used and one person did, then it would be something individual to that person, either the amount of time they laid in it or some reaction rather than something wrong with the tanning bed. Right?
A: I think that’s a reasonable assumption.
Q: Doctor, I asked you this question before. Would you classify Mrs. Swindle’s condition as a result of this [exposure] as the typical type of injury that you see when someone is overexposed or stays in UVA light too long?
A: Yes.
Dr. Resneck consistently stated that there was nothing to indicate to him that Ms. Swindle’s condition was definitely the result of a photosensitive reaction associated with any of the medications Ms. Swindle was taking during the time she was tanning at Body Blasters. Dr. Resneck further testified:
Q: Okay. All you know is that she was in fact injured by a sun bed?
A: Yes.
[[Image here]]
Q: Okay. And there’s nothing here [on Ms. Swindle’s tanning history card] that indicates to you that it was something allergic reaction is there?
A: Just isn’t any way to know.
We can find nothing in Dr. Resneek’s testimony, or anywhere else in the record, that establishes the cause of Ms. Swindle’s vascu-litis. In addition, when presented with a list of the medications being taken by Ms. Swindle, Dr. Resneck indicated that only one, Phenergan, was a commonly known photo-sensitizer. It was Ms. IgSwindle’s testimony that she was not taking Phenergan at the time of her last tanning session.
Moreover, the customer using the tanning bed is entrusted with writing the number of minutes she will be in the tanning bed on a card prior to entering the tanning room. At that point, the customer is “on her honor” to only utilize the tanning bed for the recorded number of minutes. There was no evidence, other than Ms. Swindle’s own testimony, as to how long she actually tanned on the day her skin became purple. On this record, we find Ms. Swindle failed to carry her burden of proving that a photosensitive reaction, due to the medications she was taking, caused her condition. Accordingly, Ms. Swindle has failed to prove that Body Blasters’ failure to advise her in writing of the specific categories of medications provided by the TRFA was a cause-in-fact or legal cause of her condition.

CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed and all costs are assessed to Plaintiff.
AFFIRMED.

. Dr. McElwee was the doctor who had prescribed the medications for Ms. Swindle.