Mary Louise GRENIER, Steven Grenier, Plaintiffs,

v.

MEDICAL ENGINEERING CORPORATION, Surgitek Incorporated, Defendants.

No. CIV.A.94–0990.

United States District Court, W.D. Louisiana, Shreveport Division.

April 25, 2000.

Robert I. Thompson, III, Shreveport, Richard L. Root, Barnes & Root, New Orleans, LA, for Mary Louise Grenier, Steven Grenier, plaintiffs.

Charles W. Salley, Penny N. Nowell, Lunn Irion et al., Shreveport, Timothy Allan Pratt, Matthew D. Keenan, Jane J. Kemper Bartley, Shook Hardy & Bacon,

Kansas City, MO, for Medical Engineering Corp., defendants.

## MEMORANDUM RULING

WALTER, District Judge.

Before the Court are the following motions filed by Defendants: (1) Motion for Partial Summary Judgment (Doc. # 25); (2) Motion for Summary Judgment on All Counts (Doc. # 33); and (3) Motion for Summary Judgment on Multiple Counts (Doc. # 40). For the following reasons, this Court finds Defendants' motions must be GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff Mary Grenier received silicone breast implants on March 28, 1983, following a double mastectomy. She eventually developed adverse medical conditions she attributed to her implants. Mary and Steven Grenier (Plaintiffs) filed the instant suit on May 31, 1994. On June 15, 1994, Mary Grenier underwent an explantation surgery which revealed 75–100cc of silicone gel outside the implant shell but within the scar capsule of her left breast. The treating physician examined the left implant after its removal and noted it had not ruptured. This phenomenon where silicone gel passes through the shell of the implant without any noticeable structural defect in the implant shell itself is typically referred to as "gel bleed."

## II. PROCEDURAL BACKGROUND

As Defendants were embroiled in a blizzard of lawsuits around the country, a Multi–District Litigation Court (MDL Court) was established in the Northern District of Alabama, where this case was transferred after its filing. A modified version of the standard MDL complaint was originally filed with this Court. Plaintiffs' original complaint alleged causes of action under Louisiana law, such as: (1) redhibitory defect under LA. CIV. CODE ANN. art. 2520; (2) deceptive and unfair trade practices under the Louisiana Unfair Trade Practices Act set forth in LA. REV. STAT. ANN. § 51:1409; and numerous standard MDL "counts." *See Plaintiffs' Original Complaint*, at ¶ 10–11.

On January 24, 2000, Plaintiffs filed an amended complaint streamlining the original complaint. Plaintiffs voluntarily dismissed counts XXV–XXVIII of the original complaint. *See Plaintiffs' Amended Complaint*, at 3. In addition, Plaintiffs released any and all claims relating to systemic illness caused by the breast implants. *See id.* Plaintiffs further released any and all claims of "[d]eceptive and Unfair Trade Under the Louisiana Unfair Trade Practice and Consumer Protection Law ..." *Id.* Plaintiffs Amended Complaint is based on the following local complications: (1) gel bleed; (2) migration of the silicone from the implant site to other portions of the body; (3) capsular contracture; (4) rupture of the implant; (5) scarring and numbness from explantation; and (6) resulting physical and emotional pain and suffering. *Plaintiffs' Second Amended Complaint*, at ¶ VIII.

As discussed *infra*, this Court holds the Louisiana Products Liability Act (LPLA) controls this matter and all remaining claims must be examined in that context.

## III. CLAIMS PRESENTED

*Application of the LPLA*

As Mary Grenier received her implants in 1983 and had them removed in 1994, a time frame that straddles the enactment of the LPLA in 1988, this Court must resolve the threshold issue of whether the LPLA controls this matter. *See* LA. REV. STAT. ANN. § 2800.51. The LPLA establishes the "exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the Chapter." *See id.* at § 2800.52. The LPLA is not applied retroactively. *Lewis v. In-*

*termedics Intraocular, Inc.,* 56 F.3d 703 (5th Cir.1995).

■ Plaintiffs contend the pre-LPLA law of *Halphen* applies.[1] Despite raising an argument which necessarily must be time and fact specific in terms of when the cause of action arose, Plaintiffs make no assertion of, much less state specific facts relating to, when Mary Grenier ultimately associated her medical conditions with her implants. *See Knippers v. Lambard,* 620 So.2d 1368, 1372 (La.App. 2d Cir.1993)(Plaintiff must be aware of both an alleged cause, and a correlation of the cause to the injury, for the cause of action to accrue). Confronted with this unsubstantiated claim, this Court sought some temporal reference in the record as to when problems allegedly stemming from her breast implants began. On page eight of her deposition she stated "[a]round 1990 when I first started having pain in my shoulders, I never associated this with my implants." This quote makes it clear that she had not, as of 1990, established a correlation between her implants and her asserted medical problems. Therefore, her cause of action did not arise until sometime after 1990, well after the enactment of the LPLA. *See Knippers,* 620 So.2d at 1372.

■ There is an alternative and equally persuasive reason why this Court must apply the LPLA. As this Court interprets claims in favor of preservation rather than dismissal, Plaintiffs' argument that *Halphen* controls would beg the ultimate legal conclusion that their claims would have prescribed. Under Louisiana law, a cause of action arises when a plaintiff has the right to sue. *Zachary v. Dow Corning Corp.,* 884 F.Supp. 1061, 1064 (M.D.La. 1995). The primary elements for asserting a cause of action in Louisiana are: (1) defining a wrongful act by the defendant;

and (2) declaring damages resulting from this act. *In re Asbestos Plaintiffs v. Bordelon, Inc.,* 96,0525 (La.App. 4 Cir. 10/21/98) 726 So.2d 926, 939; *See Knippers,* 620 So.2d at 1372. As such, to be entitled to the application of *Halphen,* Plaintiffs' cause of action would have to have existed before the LPLA was enacted in 1988. As they did not file suit until 1994, their cause of action would have clearly prescribed. *See* LA. CIV. CODE ANN. art. 3492 (West 1994)(delictual actions subject to a one year prescriptive period).

■ This Court will also address the assertion that the latent disease (asbestosis) rationale contained in *Cole v. Celotex Corp.,* 599 So.2d 1058 (La.1992) should control the accrual date analysis in this case. In *Celotex,* the Louisiana Supreme Court recognized a distinction between slow onset and/or latent injury torts and traditional torts involving both an easily identifiable event and resulting injury. *See id.* at 1065. Although Plaintiffs' assertion is logical, they have submitted no evidence to establish the slow onset of Mary Grenier's symptoms or any latent injury sufficient to invoke the *Celotex* standard.

Also, Plaintiffs have abandoned all systemic illness claims, leaving only those based in local complications. *See Plaintiffs' Amended Complaint,* at 3. This undercuts the rationale correlating asbestosis to problems stemming from silicone exposure. A primary concern of the Louisiana Supreme Court with the peculiar nature of asbestosis was the difficulty in determining when injuries were actually sustained. *See Celotex,* 599 So.2d at 1065. Such a rationale could be appropriate in breast implant claims involving the slow onset of systemic problems not immediately attributable to silicone implants, however, the correlation fails when applied to local complication claims. Mary Grenier's damages,

---

1. Plaintiffs contend the pre-LPLA law of *Halphen* set forth in *Halphen v. Johns–Manville Sales Corp.,* 484 So.2d 110 (La.1986) controls this matter. However, as Mary Grenier received her implants in 1983, it is just as possible, especially considering the lack of specific dates or general chronology of her problems, that the law of *Weber v. Fidelity & Casualty Insur. Co. of New York,* 259 La. 599, 250 So.2d 754 (1971) would apply.

as set forth in section II of this Memorandum Ruling, do not exhibit the same latency of asbestosis. With the exception of the gel bleed/migration complaint, all other damages are the clear result of easily definable events and not subject to the *Celotex* standard. The gel bleed/migration complaint is also not subject to the *Celotex* standard as there is no evidence of slow onset or whether any silicone migrated outside the scar capsule of her left breast.

Given these independent factors, this Court finds the LPLA applies to the case *sub judice.*

*Claims Not Cognizable Under the LPLA*

The LPLA sets forth a specific and circumscribed framework for products liability cases in Louisiana. The LPLA provides the only avenue by which Plaintiffs may assert liability on behalf of a manufacturer. *See* LA. REV. STAT. ANN. § 2800.52 (West 1994); *Brown v. R.J. Reynolds Tobacco Co.,* 52 F.3d 524, 526 (5th Cir.1995). The only way liability may attach to a manufacturer is by a showing of damage proximately caused by an unreasonably dangerous characteristic of the product when used in a reasonably anticipated manner. *See* LA. REV. STAT. ANN. § 2800.54; *Jefferson v. Lead Indus. Assoc., Inc.,* 930 F.Supp. 241, 245 (E.D.La. 1996). A plaintiff can only prove a product is "unreasonably dangerous" if it is so: (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because of nonconformity to an express warranty. *See* LA. REV. STAT. ANN. § 2800.54. Given the exclusivity of the LPLA, all causes of action inconsistent with it must be dismissed. While Plaintiffs' amended complaint forfeits claims XXV–XXVIII, claims I–XXIV[2] of the original complaint must be examined to determine if they are cognizable under the LPLA.

Counts I (Strict Liability); II (Negligence); Count V(Breach of Warranty of Fitness for a Particular Purpose); IX (as it relates to breach of implied warranty); IX (Misrepresentation/Fraud); X (Fraud by Concealment); XII (False Advertising); XIII (Negligent Infliction of Emotional Distress); XV (Common Plan to Prevent Public Awareness of Breast Implant Hazards); and XIX (Fear of Future Product Failure) are all well outside the scope of the LPLA and must be dismissed. *See* LA. REV. STAT. ANN. § 2800.52 (West 1994); *Jefferson,* 930 F.Supp. at 243 (holding that strict liability, negligence, breach of implied warranty, fraud by misrepresentation are not cognizable under the LPLA).

Plaintiffs also make a claim in redhibition against Defendants. Redhibitory defects are those that would render an item useless or so inconvenient to use that it would be presumed that a buyer would not have bought the thing had he known of the defect. LA. CIV. CODE ANN. art. 3492 (West 1999). Even if this Court is to assume Mary Grenier could have established a claim of redhibitory defect, it would be meritless as it would have prescribed. LA. CIV. CODE ANN. art. 2534(A)(1) and (B) each contain prescriptive periods that could theoretically apply to the instant matter were it not for Revision Comment (b) making any claim in redhibition subject to the overriding ten year prescriptive period contained in art. 3499. Revision Comment (b) states that "[A]n action in redhibition prescribes ten years from the time of perfection of the contract regardless of whether the seller was in good or bad faith." A contract is formed by the consent of the parties established through offer and acceptance. LA. CIV. CODE ANN.

---

**2.** There are not 24 "counts" in the original complaint—there are only 14 numbered counts, not including the claims of redhibition and deceptive trade practices. Apparently, the counts contained in this original complaint were selected from a master complaint created for the benefit of the MDL Court. The roman numerals in the original complaint presumably match those on the master complaint. As such, the counts are not sequential.

art.1927. As acceptance can be manifested through actions, this Court finds, for purposes of forming a contract between the parties to this lawsuit, that the implantation on March 28, 1983, perfected the contract. *See id.* As this suit was not filed until May 31, 1994, some eleven years after the perfection of the contract, any claim in redhibition is time barred.

## Claims Cognizable Under the LPLA

In their first amended complaint, Plaintiffs invoke each theory allowed under the LPLA: (1) defective design; (2) defective manufacture, which this Court interprets as a defective construction/composition claim; (3) failure to warn of the defective nature of the implants; and (4) breach of an express warranty. *See Plaintiffs' Amended Complaint,* at ¶ II.

## Defective Design

■ According to LA. REV. STAT. ANN. § 2800.56, a product is unreasonably dangerous in design if, at the time the product left the manufacturer's control that an alternative design existed for the product that was capable of preventing the alleged damage, and the alternative design would prevail in a traditional risk/utility analysis. Plaintiffs have submitted no evidence to satisfy either, much less both prongs of a defective design analysis. Mary Grenier had, according to Dr. Ramey the explanting surgeon, between 75–100cc of silicone gel outside the implant shell, yet the shell was still "intact." *See Surgical Explantation Report of Dr. Stephen Ramey.* Plaintiffs cannot reasonably expect to prove an alternative design that would not bleed silicone or another equivalent material through an intact shell without expert testimony. Testimony relating to the creation and testing of an alternative design would require sophisticated knowledge of, *inter alia,* aspects biochemistry, physics, and the "state of the art" of breast implant technology[3] in 1983. This Court does not accept the premise that such topics are within the average person's common understanding. Could a non-expert explain to a jury: (1) that an alternative design to the silicone implants in question existed at the time Mary Grenier received her implants; (2) how this alternative design would have prevented the injury to Mary Grenier; and (3) how such an alternative design would prevail in a risk utility analysis? The answer clearly is no. Without sufficient evidence, Plaintiffs have failed to state a claim under LA. REV. STAT. ANN. § 2800.56.

## Defective Construction/Composition

■ LA. REV. STAT. ANN. § 2800.52 requires a plaintiff to show that a product, at the time it left the manufacturer's control, deviated in a material way from the manufacturer's specifications or performance standards for the product. Defendants have pointed out, as they did with the defective design claim, that a lack of expert testimony would be fatal to Plaintiffs' claim of defective construction/composition at trial. As Defendants have raised this contention, Plaintiffs "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996). Absolutely no evidence linking the silicone gel bleed to a defect in construction or composition has been presented. The silicone gel bleed and capsular contracture that affected Mary Grenier cannot *ipso facto* establish the existence of a defect in construction or composition. *See Jaeger v. Automotive Cas. Ins. Co.,* 95–2448 (La. App. 4 Cir. 10/9/96) 682 So.2d 292. Plaintiffs have submitted nothing to indicate the implants deviated from the manufacturer's standards or even any evidence of what the manufacturer's standards are. Accordingly, Plaintiffs fail to state a cause of action under LA. REV. STAT. ANN. § 2800.52.

## Inadequate Warning

Section 2800.57 of the LPLA provides two avenues to establish a claim of inadequate warning:

---

3. LA. REV. STAT. ANN. § 2800.59.

(A) A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and· its danger to users and handlers of the product.

(C) A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers.

■■■ Plaintiffs have submitted no evidence relating to necessary elements common to both subsections (A) and (C). Plaintiffs have failed to prove that a dangerous defect existed beyond the unfortunate scenario that befell Mary Grenier. Without an adequate showing of a dangerous defect, this Court cannot impose a duty to warn on Defendants. *See Jaeger v. Automotive Cas. Ins. Co.*, 95–2448 (La. App. 4 Cir. 10/9/96) 682 So.2d 292. Also, Plaintiffs have submitted only conclusory allegations that Defendants had knowledge as to the possibility of silicone bleed, and specify no fact as to when Defendants allegedly developed or obtained this knowledge. Given these deficiencies in Plaintiffs' claim, this Court will not reach the issue of whether Defendants exercised reasonable care to provide adequate warnings or to whom the warnings should have been addressed.[4] However, had this Court undertaken such an analysis, the lack of evidence provided on these points would produce the same result.

.

■■■ An inadequate warning analysis is not limited only to satisfying the elements set forth above. In addition, any inquiry into either subsection must be viewed through the lense of the learned intermediary doctrine, which Louisiana law applies to claims of failure to warn involving drugs or medical devices dispensed by a physician. *See Zachary v. Dow Corning Corp.*, 884 F.Supp. 1061, 1065 (M.D.La. 1995). The learned intermediary, in this case the implanting physician, is the one to whom the warnings are directed because it is he or she who makes decisions or recommendations about the use of the product. *See id.* To recover under an inadequate warning claim when the learned intermediary doctrine is applicable, a plaintiff must show: (1) that the defendants failed to warn the physician of a risk associated with the use of the product ·not otherwise known to the physician; and (2) that the failure to warn the physician was both a cause in fact and proximate cause of the plaintiff's injuries. *See id.* To establish cause in fact and proximate cause, a plaintiff must show that a proper warning would have changed the decision of the treating physician—but for the inadequate warning, the treating physician would not have used the product. *See id.*

■■■ The warnings accompanying the implants received by Mary Grenier read in relevant part:

— Capsule contracture (i.e. heavy fibrous capsule formation), with accompanying firmness and discomfort in the breast is the most frequently reported complication. This condition may require surgical correction. Closed capsulotomy (i.e. manual compression of the

---

4. This Court notes that the learned intermediary doctrine places the duty running from the manufacturer to the physician. *See Zachary,* 884 F.Supp. at 1065. However, there is a potential discord between the doctrine's placement of the duty and La. Rev. Stat. Ann. § 2800.57(C) which specifically runs the duty "to users and handlers of the product." (emphasis added).

breast) may cause a rupture with potential gel extravassation.

— Hypertrophic scarring ... ha[s] been reported.

— Potential shell rupture during surgery or even well after surgery (e.g. spontaneously caused by unknown etiology or caused by external trauma—stress—forces). Ruptured implants, as well as all the gel contents, must be removed because of possible extravassation of the gel which may occur. If this phenomenon does occur additional surgery may be required to remove the gel.

*Motion for Partial Summary Judgment on Multiple Counts* (Doc. # 40) at Tab 3, p. 6. As Defendants' duty runs only to the implanting physician as learned intermediary, this Court finds that Defendants' warning itself discharged their duty as to all but one of Mary Grenier's local complications. Warnings need not use specific language to convey every possible existing danger—the law only requires them to be adequate. *See Swindle v. Body Blasters Gym, Inc.*, 31549 (La.App. 2 Cir. 2/24/99) 728 So.2d 977, 980. Also, there is no need to warn of obvious dangers. LA. REV. STAT. ANN. § 2800.57(B). The warnings explicitly state that capsular contraction is the most common risk and that it may require surgery to repair. Also, Defendants had no duty to warn against additional scarring that would result from additional surgery as scarring to some degree is an obvious consequence of surgery. This Court notes that Plaintiffs specifically cite "rupture" of the implant as an injury sustained by Mary Grenier. *See Plaintiffs' Second Amended Complaint*, at ¶ VIII. However, neither of Mary Grenier's implants ruptured. *See Opposition to Defendants' Motion for Partial Summary Judgment and for Summary Judgment on All Counts*, at 5. A claimant cannot seek to impose a duty to warn on a manufacturer of damage not sustained.

 The warning provided by Defendants does not mention anything relating to the possibility of silicone gel bleed or migration. However, the mere fact that a warning is not present does not end the inquiry. Plaintiffs fall short in presenting evidence to satisfy the requirements of the learned intermediary doctrine. As Plaintiffs would bear the burden of proof at trial, they "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996). In the absence of any proof, this Court will not assume the non-moving party could or would prove the necessary facts. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Plaintiffs have submitted no proof to show how Dr. Ramey would have reacted given a warning of the possibility or frequency of silicone gel bleed. The affidavit of Dr. Louie Worthing submitted by Plaintiffs is the exact information needed to carry their burden through the gauntlet of the learned intermediary doctrine—if only the information had come from Dr. Ramey, the person who the inquiry must revolve around. *See Zachary*, 884 F.Supp. at 1065. Coming from Dr. Worthing, it is irrelevant to the learned intermediary analysis. *See id.* Thus, Plaintiffs cannot clear the hurdle imposed by the learned intermediary doctrine.

### Breach of Express Warranty

According to LA. REV. STAT. ANN. § 2800.58, a product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue. Section 2800.53(6) defines an express warranty as a "representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance.

'Express warranty' does not mean a general opinion or praise of a product." Defendants have submitted what is purported to be an identical warranty to the one that accompanied the implants received by Mary Grenier. *Defendants Motion for Partial Summary Judgment on Multiple Counts* (Doc. # 40) at Tab 3, p. 7. The warranty states in its entirety:

> Medical Engineering Corporation warrants that reasonable care was used in the production of this product. Medical Engineering Corporation shall not be liable for any consequential loss, damage or expense, directly or indirectly arising from the use of, or inability to use, this product. THE FOREGOING WARRANTY IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, HOWSOEVER ARISING, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS. Medical Engineering Corporation neither assumes, nor authorizes any person to assume for it, any other additional liability or responsibility with respect to this product.

Plaintiffs have submitted nothing to support a breach of warranty, not even which portion of the warranty was allegedly breached. Thus, without any alleged breach upon which to base an analysis, this claim has even less legal and factual buoyancy than the others and cannot prevail under LA. REV. STAT. ANN. § 2800.58.

*Loss of Consortium*

Plaintiff Steven Grenier asserts a claim for loss of consortium. To establish such a claim, he must prove: (1) the liability of the Defendants; (2) damages to Mary Grenier; and (3) his subsequent loss of consortium. *See Peck v. Wal-Mart Stores, Inc.*, 96–645 (La.App. 3 Cir. 11/6/96); 682 So.2d 974, 977. Given this Court's finding of no liability on behalf of Defendants, no claim for loss of consortium can survive.

*Barrow Decision*

Plaintiffs' counsel submission of *Barrow v. Medical Engineering Corp.*, 1998 WL 812318 (M.D.Fla.1998) as an "excellent primer on the evidence pertaining to local complication claims contained in MDL documents and depositions," cannot be considered by this Court. A simple reading of FED. R. CIV. P. 56(c) indicates that such "evidence" is not proper.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendants' Motions for Summary Judgment (Docs.# 25, 33, 40) be and are hereby GRANTED. All claims of Plaintiffs are DISMISSED WITH PREJUDICE.

### *JUDGMENT*

Before the Court are the following motions filed by Defendants: (1) Motion for Partial Summary Judgment (Doc. # 25); (2) Motion for Summary Judgment on All Counts (Doc. # 33); and (3) Motion for Summary Judgment on Multiple Counts (Doc. # 40). For the reasons contained in the accompanying Memorandum Ruling, this Court finds Defendants' motions must be GRANTED.

IT IS ORDERED that Defendants's Motions for Summary Judgment be and are hereby GRANTED.